HOUSTON COTTON OIL COMPANY v. D. M. TRAMMELL.

No. 1219. Decided June 8, 1903.

1.—Damages—Depreciation in Value—Cross-Examination—Sales at Subsequent Time.

One who, in suit for damages to his cattle by furnishing unsound cotton seed meal for feeding, has testified that by sickness resulting they had been depreciated in value $10 per head, may be asked, on cross-examination, as to the price at which they were sold, in another market and at a subsequent but not remote date, for the purpose of testing the correctness of his judgment in estimating the damages. (Pp. 603, 604.)

2.—Same—Sales of Small Number from a Herd.

It was not permissible, on the issue of damage to a herd of cattle by bad food, to inquire as to the price brought some time after the alleged injury on the sale of a small number of particular cattle from the herd. (P. 604.)

Error to the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

The cotton oil company appealed from a judgment recovered against it in a suit by Trammell, and on its affirmance obtained writ of error.

*Boynton & Boynton* and *Baker, Botts, Baker & Lovett,* for plaintiff in error.—The appellee's (defendant in error's) cause of action being an alleged injury to cattle, and he having testified as to the extent of the injury and the decreased value of the cattle immediately following the injury by reason thereof, the appellant (plaintiff in error), on cross-examination, should have been allowed to show the actual amount of damage sustained. This was true, especially when the appellee had testified that he retained said cattle fifty or sixty days after the alleged injury, and that during that time they improved in condition, and that he then shipped and sold said cattle; and the appellant proposed to show by this evidence that appellee received the full market value of such grade of cattle in the best condition in which they are shipped from Texas. Gulf, C. & S. F. Railway Co. v. Godair, 22 S. W. Rep., 777, 3 Texas Civ. App., 514; Texas & P. Railway Co. v. Avery, 33 S. W. Rep., 705; Houston & T. C. Railway Co. v. Williams, 31 S. W. Rep., 559; New York, etc., Railway Co. v. Estill, 147 U. S., 616; 2 Sedg. on Damages, 8 ed., sec. 435; Streett v. Laumier, 34 Mo., 469; Gillett v. Railway Co., 8 Allen, 560; Keyes v. Railway Co. (Minn.), 30 N. W. Rep., 888; Field on Dam., sec. 782.

The appellant should have been allowed to ask such questions and introduce such evidence, if only for the purpose of testing the value and truth of appellee's testimony as to the extent of the injury to the cattle and the amount of his damage thereby. Herring v. Patten, 44 S. W. Rep., 50, 18 Texas Civ. App., 147; Dittman v. Weiss, 31 S. W. Rep., 67; Morrill v. Palmer (Vt.), 33 Law. Rep. Ann., 411; 2 Jones on Ev., sec. 391; 3 Id., sec. 826; Wells v. Kelsey, 37 N. Y., 143.

The Court of Civil Appeals erred in affirming the case, because the

lower court committed error in excluding the evidence of the witness Memecek, offered by the appellant, whereby he could have proved the price which the appellee received for a portion of the cattle, which he claims to be permanently injured, and which cattle were sold by appellee at the place where the alleged injury was inflicted, a short time after he claims that they received the same, but after he had admitted they had improved in condition.

The Court of Civil Appeals erred in affirming the judgment of the lower court, because of the error in the charge given by the trial court, wherein "sound cotton seed meal" was defined as "cotton seed meal suitable for the purpose of feeding and fattening cattle in pens for the market." And there was also error in refusing the special charges asked by appellant, which defined "sound cotton seed meal" as "cotton seed meal which was not rotten and not made of rotten seed." Jones v. George, 61 Texas, 345; Seitz v. Brewers R. M. Co., 141 U. S., 510; Grand Ave. Hotel Co. v. Wharton, 79 Fed. Rep., 43; 2 Mecham on Sales, secs. 1337, 1349; Diebold Safe and Lock Co. v. Huston, 28 Law. Rep. Ann., 53.

There was error by the Court of Civil Appeals in affirming the judgment, because the trial court erred in failing to give to the jury the eighth special charge asked by the defendant which stated the duty of the appellee with reference to his use of care to cure his cattle if they became sick, and the legal effect of his failure to use such care, and instructed the jury to find a credit for the appellant if they found a failure to use such care, because there was no evidence to distinguish between the damages which were unavoidable and which could have been avoided.

And because there was error in the trial court in refusing to give to the jury the sixth special charge asked by the appellant in which the jury were instructed that the only damages recoverable were such as could have been reasonably anticipated from a breach of the contract.

It was the duty of the appellee to exercise reasonable and ordinary care and attention towards his cattle when they became sick, and thereby to reduce the injury and damage as much as possible, and the charge of the court did not present these matters as fully and fairly as did the special charge asked and refused. Galveston, H. & S. A. Railway Co. v. Becht, 21 S. W. Rep., 971; Frank Co. v. Motley Co., 37 S. W. Rep., 868; 1 Suth. on Dam., 148.

The appellee having testified that he did exercise proper care and attention towards his cattle when he found they were sick, and the uncontradicted evidence showing that the cattle in fact improved after they became sick, and before they were sold by appellee, the burden was upon him to show the original apparent damages, and the amount thereof, which was removed by such care and attention, or the extent and value of the damage which could not be so removed.

In actions based upon breach of contract or on tort, the act complained of must have been the proximate cause of the injury, and it must appear that the injury was the natural and probable consequence

of such negligent act, and should have been foreseen in the light of attending circumstances in order to entitle the injured party to recover. Jones v. George, 61 Texas, 354; Texas & P. Railway Co. v. Reed, 88 Texas, 439; Texas & P. Railway Co. v. Bigham, 90 Texas, 223; Seale v. Gulf, C. & S. F. Railway Co., 65 Texas, 274; Brandon v. Manufacturing Co., 51 Texas, 126; Railway v. Kellogg, 94 U. S., 474; McAllen v. Telegraph Co., 70 Texas, 245; Gulf, C. &. S. F. Railway Co. v. Hamilton, 28 S. W. Rep., 908; Railway v. Fleming, 20 Am. and Eng. R. R. Cases, 549; Haile's Curator v. Railway Co., 60 Fed. Rep., 557; Pullman Palace Car Co. v. Barker, 4 Colo., 344; Triggs v. Railway Co., 74 Mo., 147; Hobbs v. Railway Co., L. R., 10, Q. B., 111; 44 L. J. (Q. B.), 49; Francis v. Transfer Co., 5 Mo. App., 7; Railway v. Birney, 71 Ill., 392; Cobb v. Railway Co., L. R., 12, Q. B. Div., 459; Scheffer v. Railway Co., 105 U. S., 249.

There was error by the Court of Civil Appeals in affirming the judgment of the trial court because of the refusal to give the fifth special charge asked by the defendant, which stated more fully than did the charge of the court the duty of the appellee or his representatives to make a full examination of the meal tendered by appellant as a fulfillment of the contract before any such meal was used, the evidence being undisputed that the meal was handled and mixed before it was fed. And because the trial court erred in refusing to give the first special charge asked by the appellant relating to the duty of the appellee or his representatives to examine said meal before the same was fed to his cattle.

It was the duty of appellee to exercise all reasonable and ordinary care to avoid giving improper food to his cattle. He is not entitled to recover any consequential damages because of any unsoundness of the cotton seed meal furnished under the contract, where such meal was examined by him or his representatives before the same was used as food, if the character of the meal as to unsoundness was apparent from such inspection or examination. Seay v. Diller, 16 S. W. Rep., 642; Parks v. O'Connor, 70 Texas, 387; Florida Athletic Club v. Lumber Co., 44 S. W. Rep., 10, 18 Texas Civ. App., 161.

The Court of Civil Appeals erred in affirming this judgment, because of the refusal of the trial court to give the jury the third and seventh special charges asked by appellant, and which distinguished clearly between temporary injury and permanent injury to appellee's cattle.

The appellee was only entitled to recover the damages alleged by him in his petition, and the jury should have been limited by the charge to the consderation of the permanent injury to appellee's cattle. Railway Co. v. Measles, 81 Texas, 474; Texas & P. Railway Co. v. Durrett, 58 S. W. Rep., 187, 24 Texas Civ. App., 103; Lasker, etc., Assn. v. Hatcher, 28 S. W. Rep., 404.

The evidence showing that appellee's cattle became sick and that he retained possession of them for fifty or sixty days after they became sick, and that in such time they materially improved in condition, and the suit being for the permanent injury, the measure of damages should

have been limited to the difference in the value of the cattle before such injury, and after such improvement, no expense being sued for. Gulf, C. & S. F. Railway Co. v. Godair, 22 S. W. Rep., 777, 3 Texas Civ. App., 514; 2 Sedg. on Dam., 8 ed., sec. 435; Streett v. Laumier, 34 Mo., 469.

*Henry & Stribling* and *Spell & Phillips,* for defendant in error.— Upon the proposition that the ruling of the trial court and the opinion of the Court of Civil Appeals [on refusal to permit inquiry as to the price received in Kansas City] was and is correct, we respectfully invite the court's attention to the following authorities, some of which are cited in the brief filed in the Court of Civil Appeals for this defendant in error, calling attention also to other authorities cited in that brief: Yoakum, Receiver, v. Dunn, 1 Texas Civ. App., 524; Gulf, C. & S. F. Railway Co. v. Hume, 87 Texas, 221; Gulf, C. & S. F. Railway Co. v. Hume, 24 S. W. Rep., 917; Gulf, C. & S. F. Railway Co. v. Stanley, 29 S. W. Rep., 806; Texas & P. Railway Co. v. Jones, 58 S. W. Rep., 174, 23 Texas Civ. App., 557; Texas & P. Railway Co. v. Avery, 33 S. W. Rep., 705; Barber v. Hutchins, 66 Texas, 322; McCown v. Kitchen, 52 S. W. Rep., 802; Oppenheimer v. Halff, 68 Texas, 413; Moore v. Temple Grocery Co., 43 S. W. Rep., 845; Halff v. Goldfrank, 49 S. W. Rep., 1096; Haney v. Clark, 65 Texas, 98; Lichenstein v. Brooks, 75 Texas, 198; Texas & P. Railway Co. v. Randall, 44 S. W. Rep., 603; San Antonio & A. P. Railway Co. v. Wright, 49 S. W. Rep., 147, 20 Texas Civ. App., 136; Suth. on Damages, sec. 107; Brady v. Finn (Mass.), 38 N. E. Rep., 506; Chaney v. Coleman, 77 Texas, 103; Denison & P. S. Railway Co. v. Cummins, 42 S. W. Rep., 588; Comer v. Way (Ala.), 54 Am. St. Rep., 93; Jones v. St. Louis, etc., Railway Co. (Ark.), 22 Am. St. Rep., 175; Needham P. & O. Co. v. Hollingsworth, 40 S. W. Rep., 787, 91 Texas, 49.

With reference to the evidence sought to be adduced by the witness Memcek as to the amount paid by him for a few head of these cattle, we call attention to the authority of Needham P. and O. Company v. Hollingsworth, a decision by this court, in which evidence was admitted of the worth of a stock of goods when sold at retail. In passing upon the question the court said: "The value at which a stock of goods may be sold at retail, standing alone, in our opinion, does not afford any sufficient basis for determining their market value. The market value is what the goods would have been promptly sold for in bulk or in convenient lots. Between the prices at which goods may be obtained in a market and at which they may be sold at retail in the same place intervene time, expense, and profit, which, in the absence of proof, are unknown quantities; and hence, if there had been no other testimony save that pointed out in the petition for the writ, we would be still of the opinion that there was no evidence suggested by the verdict for the defendants to the amount recovered by them."

And, with reference to this proffered testimony, the same considerations apply as are stated above with regard to it not being shown that

the market value of such cattle at such time was the same as before their injury, nor were the peculiar circumstances and conditions surrounding that transaction shown so as to have afforded the court some means of determining whether or not it cast any real light upon the true issue.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals stated the following as the facts of this case:

"In August, 1900, the plaintiff and appellant executed the written contract set out in plaintiff's petition, whereby the appellant agreed that it would, in October of the same year and thereafter, furnish and deliver to the plaintiff at West, Texas, sound cotton seed meal. The written contract is silent as to the purpose of the plaintiff in purchasing the meal, and as to the use he intended it for; but the appellant, through its agents and officers, knew that the plaintiff, in the purchase of the meal, intended to use it for the purpose of fattening beef cattle for market. On October 17, 1900, at West, Texas, the plaintiff put in pens, for the purpose of feeding, 423 head of cattle, which he intended to feed and fatten for market with the cotton seed meal and hulls. In pursuance of the contract, the plaintiff then demanded cotton seed meal of appellant, and after some delay, sound meal and hulls were delivered to the plaintiff at West, Texas, by the appellant, which was fed to the cattle, upon which they thrived, until about the 6th day of December, 1900, when about that time and afterwards the appellant delivered and furnished to plaintiff unsound and unwholesome cotton seed meal, which was fed to plaintiff's cattle and caused them to become sick, and injured them in the manner set out in plaintiff's petition. From the 6th of December to the 13th of December the plaintiff was absent from West, and during that time left the cattle in charge of an employe who was inexperienced in feeding cotton seed meal to cattle, and of ascertaining the quality of such meal. Upon the return of plaintiff on the 13th of December, he discovered that the cattle were sick and in bad condition. The plaintiff's evidence upon this subject is as follows: 'They (meaning the cattle) were standing around in the lot with their ears flopped, eyes sunk in their heads, hair all turned up, and they were scouring badly, passing bloody mucous. They would lay down and this matter would pass from them, and would trail after them when they would get up. They were off their feed and were sick. I examined their food and found some sour meal made of rotten cotton seed that had been burned out in my judgment.'

"The plaintiff upon this discovery, notified the agents of appellants of the condition of the cattle, and demanded sound cotton seed meal, which the appellant then through their agents agreed to furnish. Upon discovery of the bad condition of the meal, plaintiff ceased feeding it to his cattle. The appellant thereafter furnished other meal which was fed to the cattle, and which at the time was by plaintiff's servant in charge of said cattle supposed to be sound meal. But this meal was

also unsound and unwholesome, and aggravated and increased the sick condition of the cattle. As soon as the plaintiff discovered that the meal was not sound and wholesome, he ceased feeding same to the cattle. The injuries from this last feeding were in the latter part of December, 1900. The cotton seed meal furnished by appellant was not sound and wholesome for the purpose of feeding cattle, which fact was known to the agents of appellant, or could have been discovered by the exercise of ordinary diligence; and by reason thereof, the cattle became sick and fell off in weight and deteriorated in market value at West, Texas, in December, 1900, $10 per head. About the last of January or the first of February, 1901, plaintiff sold thirty-one head of the cattle in West, Texas, and the balance in Kansas City and Chicago, and up to the time of these sales the cattle had not recovered or been restored to the health and sound condition they were in before the unsound meal was fed to them. But they were, to some extent, improved in comparison to their condition in December, 1900, immediately and soon after they were fed the unsound meal. The plaintiff and his servants in feeding the cattle, exercised ordinary care to discover the condition of the meal, and the same was fed in ignorance of the fact that it was not wholesome and sound; and the evidence warrants the conclusion that the plaintiff, after discovering the condition of the cattle, used ordinary care to cure them and restore them to their former condition."

Trammel instituted suit against the Houston Cotton Oil Company to recover damages occasioned to 423 head of cattle by feeding unsound meal to them which was alleged to have been furnished by the cotton oil company under the contract as above stated. The defendant admitted the execution of the contract as set out in plaintiff's petition, but denied that the cotton seed meal and hulls caused the sickness and damages claimed, alleging other grounds and reason why the plaintiff's cattle became sick; also that if the meal was unsound Trammel ought to have rejected it before feeding it to his cattle and could have avoided the injury by so doing, and purchasing sound meal in lieu thereof. The answer also contained allegations of contributory negligence on the part of Trammell in failing to do other things which might have been done to lessen the damages. Upon a trial before a jury Trammell recovered judgment for $2100 against the cotton oil company, which was affirmed by the Court of Civil Appeals.

The plaintiff, Trammell, being upon the stand as a witness, in his own behalf, testified in substance that, about October 22, 1900, he placed in pens at West, Texas, to be fed for market, about 423 head of cattle, which did well until about the 6th of December, 1900, when he began to feed them cotton seed meal furnished by the defendant under the contract alleged, when they became sick and lost weight; got in bad condition and were never in good condition again before he sold them; that the difference in the market value of said cattle at the town of West, Texas, just before and just after such sickness was the sum of

$10 per head; that is, the cattle were worth $40 per head before they were made sick by the meal and $30 per head afterwards; that the cattle improved some afterwards, but never got in as good condition as they were before. Witness testified that he sold thirty-one head of the cattle at West, Texas, to a butcher, and sold the remainder in market in Kansas City and Chicago. After this testimony the defendant upon cross-examination of the plaintiff asked him "how much he received per head for the cattle sold in Kansas City and Chicago," to which question the plaintiff objected, because the measure of damages is the difference between the market value of said cattle at West, Texas, be- before and after they became sick, and because the time at which they were sold was forty to fifty days after they became sick, which objec- tion the court sustained, and the defendant excepted. The action of the court in sustaining this objection is the basis of the first assign- ment of error presented by the application for writ of error.

It is true that, as applicable to the facts of this case, the measure of damages, as claimed, is the difference between the market value of the cattle at West just before and just after they were made sick by eating the meal, and the evidence was not admissible to establish as the meas- ure of damages the market value of the cattle at the places where sold as the criterion by which to determine the amount of recovery; but the plaintiff having testified upon direct examination to the fact that the cattle had depreciated as much as $10 per head while sick, it was permissible on cross-examination to ascertain from him the price at which he sold the cattle at a subsequent but not remote date, because the testimony would tend to show that the plaintiff's opinion of the amount which the cattle had declined in value was not correct and thus impeach the reliability of his judgment in making estimate of the dam- ages sustained. Herrin v. Patten, 44 S. W. Rep., 50. The trial court erred in excluding the testimony offered, for which this judgment must be reversed and the cause remanded.

Earnest Memcek, a witness for the defendant, being on the stand, testified, in substance, that about forty or fifty days after the cattle were made sick by eating the meal, the defendant in error, Trammell, sold to the witness, at the town of West, in Texas, thirty-one head of the cattle, which witness bought for the purpose of butchering, and they were in good condition at that time; that some were of the small- est of the lot and some were medium size. Counsel for the oil company then asked the witness what he had paid for the cattle; plaintiff below objected, which was sustained and the ruling is assigned as error. We are unable to see how the price paid for the cattle at West would tend to prove any issue in this case. The plaintiff was not suing for the damages to the cattle which were sold at West, Texas, and their value could throw no light upon the question before the court. There was no error in excluding the evidence.

We deem it unnecessary to discuss the other assignments of error.

The charge of the court presented the law in a clear and explicit manner and in our opinion covered every phase of the case which was attempted to be presented by the charges refused so far as the requested charges were correct. Because of the error before stated, the judgments of the District Court and of the Court of Civil Appeals are reversed and this cause is remanded for further trial.

*Reversed and remanded.*