## G. W. BENJAMIN v. GULF, COLORADO & SANTA FE RAILWAY COMPANY.

### Decided March 7, 1908.

**1.—Riparian Owner—Rights—Pollution of Stream.**

Riparian owners have a natural right to have streams flow unimpaired in quality as well as quantity, and any use of the stream by one proprietor which defiles or corrupts it to such a degree as to essentially impair its purity and usefulness for any purpose to which running water is usually applied is an invasion of private right, for which those injured thereby are entitled to a remedy. This rule applied to a case where the waters of a stream were polluted by the waste oil from the shops and yard of a railroad company. It was no defense that defendant owned the land on which its shops were situated, and used care to prevent the escape of the oil.

**2.—Same—Injury to Cattle—Right of Recovery.**

In a suit for damages for injury to cattle by polluting the waters of a stream it was not incumbent on plaintiff to show that his cattle were healthy and thriving before they were poisoned, or that he used ordinary care and diligence in handling his cattle and in removing them from the polluted stream. The plaintiff, as riparian owner, was entitled to the use of the water free from material pollution, and it did not devolve on him to remove his cattle from his own premises to prevent a tort and its consequences, unless he could do so at moderate expense.

**3.—Measure of Damage—Date of Injury—Pleading.**

Where, in a suit for damages for injury to cattle caused by drinking the water of a polluted stream, plaintiff alleged that his damages accrued on a certain date, the measure of damage was the depreciation in the market value of said cattle on the date named, caused by the pollution of the stream.

**4.—Tort—Expense to Avoid Injury—Charge.**

Where a plaintiff incurs expense to avoid or lessen the injurious consequences of the tortious act of the defendant, the plaintiff is entitled to recover the expense necessarily incurred, and a charge which denies him the right to recover anything, if he incurred more expense than was necessary, is erroneous.

**5.—Tort—Pollution of Stream—Loss of Use of Land—Damage.**

Where, by reason of the pollution of a stream, a riparian owner is deprived of the use of his land for pasturing cattle, the value of the use is an

element of damage which a jury might consider in estimating the total damage.

**6.—Practice—Erroneous Charge—New Trial.**

Where it cannot be ascertained with certainty what influence, if any, an erroneous charge had upon a verdict rendered, a cause should be remanded for a new trial.

ON REHEARING.

**7.—Appeal—Affirmance in Part—Practice.**

Where, in a suit for damages, there are several separate and distinct items of damage claimed, and the errors in the charge of the court requiring a reversal of the case on appeal relate to only one of said items, the case should be remanded for a new trial only as to such item, and the judgment should be affirmed as to the other items.

Appeal from the District Court of Johnson County. Tried below before Hon. O. L. Lockett.

*Poindexter & Padelford,* for appellant.

*Terry, Cavin & Mills, Brown & Lomax* and *Chas. K. Lee,* for appellee.

RAINEY, Chief Justice.—This is an appeal from a judgment rendered by the District Court against G. W. Benjamin, appellant, in an action brought by him against the Gulf, Colorado & Santa Fe Railway Company for damages accrued to him by reason of the misconduct of said railway company. He alleged, in substance, that said railway company had erected in the city of Cleburne extensive machine and other shops, switch yards, large tanks for the storage of oil, roundhouses, etc., which were used in the manufacture and repair of engines, cars, etc.; that oil stored in said tanks was used for fuel and lubricating and other purposes, to carry on its railway operations, that a large amount of water was used in cleansing engines, machinery, etc.; and that a large amount of said water and oil was allowed to escape from said shops, which was conveyed through a system of drainage and sewerage constructed by defendant to East Buffalo Creek, and thereby polluting the waters of said creek. That said Buffalo Creek runs south to Nolan River about five miles, passing through appellant's lands, said lands being located on both sides of said river for a distance of one mile. That in 1904, 1905 and 1906 large quantities of said oil was permitted to escape and flow into said creek and to mix and commingle with the waters of said creek and flow down upon plaintiff's land and thereby contaminated and polluted said stream, which pollution and contamination caused destruction to all vegetation, grasses and crops with which it came in contact, and was injurious and hurtful to all stock that drank it. That plaintiff owned a large herd of fine cattle and no other water for them to drink, and the drinking of said water and oil caused his cattle to become sick and diseased and rendered them unmarketable and caused the death of some of them, as the result of which he was forced to abandon stock raising. That when said creek overflowed

it washed said oil over his land and said oil killed his oat crop and killed the grasses growing thereon, rendering the land worthless for pasturage purposes; that said pollution destroyed the fish in the stream and thereby his fishing privileges were destroyed, and prayed for $4500 damages.

Defendant answered, by general denial, two years limitation, negligently failing to properly care for and protect his stock by providing them with pure water, and to protect his crops. That damages, if any, to crop and grasses was caused by extraordinary overflow and that defendant owned the land on which its plant was situated; that the use of the oil was necessary in the operation of its business; that of necessity some oil was bound to escape, but defendant used all care to prevent any more than possible from escaping; that it was entitled to allow said oil to be carried off according to the natural lay and drain of ·the land, which is towards Buffalo Creek, and that the escaping of said oil is a matter beyond ·its control and not the result of any violation of plaintiff's rights, etc.

A trial resulted in a verdict and judgment for the railway company and Benjamin appeals.

The court overruled plaintiff's fourth and fifth exceptions to certain parts of defendant's answer, which ruling is here assigned as error. Said exceptions read as follows:

4th. "Plaintiff specially excepted to that part of the defendant's answer contained on page eight thereof wherein defendant alleges that it has the right to use the natural waterways and drains in the conduct of its business and wherein it inferentially alleges that it has a legal right to turn said oil into East Buffalo Creek, because same is wholly immaterial and irrelevant and affords no ground of defense to plaintiff's cause of action. Defendant does not allege that it has constructed a reservoir of its own in which to catch waste oils from its said shops or that it used any effort to prevent same from running into said creek nor does it allege that it has condemned said creek or any part of plaintiff's land for its own use as a place for the storage or deposit of said waste oils. Wherefore the plaintiff prays the judgment ·of the court."

5th. "Plaintiff specially excepts to that part of defendant's answer found on pages eight and nine thereof wherein it alleges in substance that it uses all possible diligence to reduce the amount of waste oil that runs from its premises into said creek and that the waste oil and water must go somewhere and that defendant has the right under the law to allow said oil to go in its natural channels and to be carried off into said creek and that to deprive the defendant of this right would be to deprive it of the right to use said oil. Because said facts afford no defense whatever to plaintiff's cause of action, and same is wholly irrelevant and immaterial and as such should be stricken out by the court. Because the defendant does not pretend that it has condemned plaintiff's property or any part thereof for the deposit and storage of said waste oil. Because defendant by said facts alleges no legal excuse or justification for polluting the waters of said creek and injuring and damaging the plaintiff and his property. Wherefore plaintiff prays judgment of the court."

That part of the answer to which said exceptions relate reads as follows: "That in the handling of oil in oil tanks as a common carrier it is necessary from time to time to clean out said oil tanks and in the handling and using of oil in its engines it is necessary from time to time to clean out said engines and it is necessary to have a place where said tanks and engines may be cleaned out and it is necessary to use water heated to a high temperature and steam to clean same and for that purpose it is necessary in the operation of the railroad to have a place where said water may drain and be carried off; that the natural, proper and only place where such work can reasonably be done is at the shops and roundhouses of the defendant, which, as aforesaid, are in the town of Cleburne on property of this defendant. Defendant shows that as an owner of the land its shops are located on, it is entitled to use the said land and the natural waterways and drains thereof in the conduct of its business which is of a public character, and under its charter and as a railroad corporation in the discharge of its duty to the public as such it is entitled to have and maintain at said machine shops and in the discharge of its duties to the public in handling the oil tendered to it as a carrier it must have a place where it can clean out oil tanks as aforesaid, and that as aforesaid the reasonable and proper place where such work should be done is at its machine shops and roundhouses as aforesaid in Cleburne, Texas. Defendant shows that in the using of said oil and in the cleaning out of its engines and in the cleaning out of its said tank cars that it has and does use all possible diligence and care to reduce the amount of waste oil that may run from its premises and the water necessarily used in the cleaning of said equipment, to the lowest possible minimum, and that it allows no more oil to escape than it can reasonably avoid; that the waste oil and water must go somewhere, and that as an owner of property and land the defendant has the right under the law to allow the said waste oil to go in its natural channel and be carried off in the natural way as has any other property owner of land, and that such oil, if any escapes from defendant's premises, goes and empties into the natural channels and streams according to the lay of the land for the necessary drainage of defendant's property; that to deprive the defendant of the right to so dispose of its oil would be in effect to deprive it from using oil in its engines or from handling oil for the public and from utilizing the mineral resources of the State for the operation of its engines, and would in effect deprive it from serving the public as a common carrier and prevent it from discharging its duties as a railway company and the purposes of its charter, and deprive it of its right to use its land and to get the benefits out of the same such as could be available to any individual landowner. Wherefore defendant says that if any damage has resulted to plaintiff by reason of such oil as does escape from defendant's shops and roundhouses (and the defendant denies that any damage has resulted to plaintiff whatever) the defendant says that the same is the result of matters beyond the control of this defendant and is not the result of any violation of plaintiff's rights by this defendant, but same

results solely and alone from the proper use by defendant of its own property and the proper discharge by the defendant of its obligations under the law."

The rule is that "riparian owners have, also, a natural right to have streams flow unimpaired in quality as well as quantity; and any use of the stream by one proprietor which defiles or corrupts it to such a degree as essentially to impair its purity and usefulness for any purposes to which running water is usually applied, is an invasion of private right, for which those injured thereby are entitled to a remedy." Gould on Waters, sec. 219. The foregoing is modified to the extent that "proprietors of useful manufactories should be held responsible only for appreciable injury caused by their works, and not for slight inconveniences or occasional annoyances." Id., sec. 220. So the defendant, if a riparian owner, would not be authorized to allow deleterious matter to flow into Buffalo Creek that would pollute the water to the extent that it would materially affect the water to plaintiff's injury. Plaintiff's case is predicated upon the theory that the water was so polluted, and it is not a defense to such an action that defendant owned the land on which its plant was situated, that it used care, and no more oil escaped than it could avoid. While it had the right to use its property in a lawful manner, plaintiff also had the right to the use of the running water of Buffalo Creek, and if defendant polluted the waters of Buffalo Creek to the extent of materially injuring the riparian owners, it exceeded its legal rights and made itself liable for any injury that flowed from its acts.

The said answer does not set forth sufficient grounds to exempt defendant from liability if the waters in Buffalo Creek were polluted, as claimed by plaintiff, and the court erred in overruling plaintiff's exceptions. The court ignored this plea and did not submit it as a ground of defense to the jury, and his overruling the exceptions would probably not reverse the case had other proceedings in the case been errorless, but as the judgment will be reversed we thought it best to express our views upon it.

The appellant complains of the second paragraph of the court's charge, which reads as follows: "If you believe from the preponderance of the evidence that the defendant railway company, its agents or servants in charge of its machine shops and yards, permitted waste oil from its said shops and yards in Cleburne, Texas, to be turned into East Buffalo Creek or permitted and allowed the same to pass into said creek after April 13, 1904, in such quantities as to pollute and render the waters on plaintiff's land situated on and adjoining Buffalo Creek to become unhealthy and unwholesome for cattle to drink, and that such oil was in said water from and after said time and that plaintiff's cattle drank said unhealthy and unwholesome water, and that by reason thereof said cattle became unhealthy or diseased and thin in flesh and that some of them died from the effects of the said oil in said water on plaintiff's land, and that said cattle by reason of their unhealthy or diseased condition were rendered unmarketable and were damaged by the effect of said oil upon them, and you further believe that prior to the time said oil was permitted

by the defendant to pollute said water in Buffalo Creek, if you find
that to be the fact, the plaintiff's cattle were in a healthy and thriving
condition before they partook of said oil upon said water, and
you further find that the plaintiff used and exercised ordinary care
and diligence in the handling of said cattle and was unable to sell
the same and had no other pasture or place to which he could remove
the said cattle; and in securing other pastures or places to remove
said cattle or in selling the same, the plaintiff used and exercised
ordinary care and diligence and sold said cattle as soon as he could
find a market for the same, then you are instructed that plaintiff
would be entitled to recover such damage for same as set out and
charged in paragraph No. 19 of this charge."

The objections to this charge are that if the cattle were damaged
before plaintiff could recover he must show affirmatively, first, that
said cattle were in a healthy and thriving condition before they par-
took of said oil by drinking said water; second, that he used ordinary
care and diligence in handling said cattle and was unable to sell
them; third, that he had no other pasture or place to which he could
remove same, and in securing other pastures or places to remove
same to or in selling same, he exercised ordinary care and diligence;
and, fourth, that he used ordinary care and diligence and sold said
cattle as soon as he could find a market for the same.

It was not incumbent upon plaintiff to show that his cattle were
healthy and in a thriving condition before he was entitled to recover.
His cattle may not have been in a healthy and thriving condition,
yet, if the drinking of the oil caused some of them to die and in-
jured the others, he was entitled to recover damages to the extent
of the injury that he sustained. The charge conveys the idea that
if they were not in a healthy and thriving condition he could not
recover, although they were damaged by the pollution of the stream.
Nor was it incumbent on him to show that he used ordinary care in
handling his cattle. That is a defense that rests with the defendant.
Nor did he have to show diligence in placing them in other places,
or securing other pastures in which to place them, or in selling
them as soon as he could find a market. The evidence shows that
plaintiff owned a herd of stock cattle; that he had some land that
was used to keep cattle on; that Buffalo Creek runs through said
land. He was entitled to the use of said water free from material
pollution. He had no other water for his cattle to drink, and it did
not devolve upon him to remove his cattle from said premises to
prevent a tort and thereby secure himself from damage, unless he
could do so at moderate expense. He was not bound to sell his
cattle as soon as he could find a market, or at all if he did not
wish to.

We recognize the rule that where wrong is committed and injury
results therefrom, the injured party must lessen the damages that
flow therefrom "if he can do so by ordinary effort and care or at
a moderate expense." (Texas & St. Louis Ry. Co. v. Young, 60
Texas, 202.) But we do not think this case one that authorizes
the court to charge the jury that the burden was on plaintiff to
entitle him to recover, to show that he had not failed in using proper

care. Cooper v. City of Dallas, 83 Texas, 239; Waco Artesian Water Co. v. Cauble, 19 Texas Civ. App., 417. The reference in the charge to paragraph No. 19 of the charge did not correct the errors here complained of, as said paragraph No. 19 is upon the measure of damages, and does not eliminate the objectionable features in paragraph No. 2 of the charge.

Objection is made to the action of the court in not giving to the jury special charge No. 1, requested by appellant, which reads: "You are instructed, at the instance of the plaintiff, that if you should find and believe from the evidence that the plaintiff did not under all the circumstances surrounding him use ordinary care in feeding the fifty head of cattle that he is alleged to have put on feed on the 26th day of November, 1904, and which he alleged he sold on the 26th day of January, 1905, and if you should fail to find for him the difference between the amount for which said cattle sold on the 26th day of January, 1905, and what they would have sold for on said day had they not been injured and damaged by drinking said oil and water, and have found against plaintiff on this issue, then and in such case you will next consider whether they were of less value on said date than they would have been had they not been forced to drink said oil and water in said creek, then and in such case you are instructed by the court that if you believe from the evidence that said oil was allowed to escape by the defendant company into East Buffalo Creek and to pass into the water of said creek upon the land of the plaintiff, and that plaintiff's cattle were forced to drink said oil and water during the year 1904, and that by reason thereof said cattle were damaged, rendered unhealthy and thin in flesh and were less valuable on the 26th day of November, 1904, than they would have been at said time and place had said oil not been thus mixed with said water and had they not been forced to drink the same, then and in such case you will find for the plaintiff as damages the difference in the market value of said cattle on the 26th day of November, 1904, at plaintiff's ranch in Johnson County, Texas, and what the market value of said cattle would have been at said time and place had they not been thus damaged by drinking said water."

Plaintiff's pleading claimed damages had accrued to him on November 26, 1904, by reason of said pollution, and the special charge sets forth the proper measure of damages. The court charged the measure to be the difference between the market value at that time and the market value at the time they were sold. The evidence shows that part of the cattle were sold some two months after that date, and the other cattle over one year after the first sale. We think the court erred in refusing said special charge, but should have given it, or given one embodying the same in substance. Houston Cotton Oil Co. v. Trammell, 96 Texas, 598. Of course, said charge would be subject to such instructions on contributory negligence as might be proper under the circumstances.

Part of paragraph twelve of the court's charge, in reference to the sixty-seven head of cattle, reads: "If you believe from the evidence that in moving said cattle from the plaintiff's home place

over onto Nolan River that it was not necessary to move them to said place, or that in doing so the plaintiff did not exercise ordinary care in removing said cattle to said place and in feeding and caring for them there, then and in such case you will find for the defendant as to the damages for moving, feeding and caring for the sixty-seven head of cattle on Nolan River."

That portion of the charge after the word "or" which relates to the exercise of care in moving, feeding, etc., to find for defendant, is misleading, because if it was necessary for plaintiff to remove his cattle to protect them from the drinking of the oil the plaintiff would be entitled to recover for the extra expense of moving, feeding and other expenses, if any, occasioned by the necessity of moving said cattle, but he could not recover for the loss, if any, above what was necessarily occasioned by his failure to exercise ordinary care in the moving and feeding of said cattle. Under the circumstances it was error to tell the jury to find for defendant if the plaintiff did not exercise ordinary care in the matters mentioned, without qualification. Cooper v. City of Dallas, 83 Texas, 239; Hughes v. City of Austin, 12 Texas Civ. App., 178.

The seventeenth paragraph of the court's charge is assigned as error. It reads: "You are instructed that as to the 200 acres of pasture land, a part of the home place of plaintiff, that if you believe that the oil that passed from defendant's machine shops and yards did not pollute and injure the waters of Buffalo Creek so as to render the same unhealthy for cattle to drink on plaintiff's land, or if you believe that the water of Buffalo Creek was damaged and polluted by the oil on said water so as to make the same unhealthy for cattle to drink, but that the same did not damage or decrease in rental value the plaintiff's pasture land, then in that event you will find for the defendant on this issue; or, if you believe that the said water was polluted by the oil and rendered unhealthy for cattle to drink, but that plaintiff's cattle were not damaged and injured directly or proximately and made sick from the drinking of the said water, then you will find for the defendant on this issue."

The last clause of said paragraph, which reads: "Or if you believe that the said water was polluted by the oil and rendered unhealthy for cattle to drink, but that plaintiff's cattle were not damaged and injured directly or proximately and made sick from the drinking of the said water, then you will find for the defendant on this issue," it is claimed imposes a condition that is contrary to law and destructive of plaintiff's rights.

There is no evidence that plaintiff offered or desired to rent the land, and if he used it as a pasture and the water by reason of being polluted made his cattle sick and he was damaged thereby the measure of his damages would be the difference in the market value of said cattle produced by said pollution, and not the rental value of the land. But plaintiff testified that he moved sixty-seven head of said cattle, leaving fifty head on said land, to another pasture to prevent injury to them from said pollution. If such was the case, or if plaintiff in moving said cattle had reasonable grounds for believing—such grounds as would authorize an ordinarily prudent person in

moving them—that it was necessary to remove them to prevent injury, then he could recover what the value of said land was for pasturing the additional sixty-seven head, that is, the rental value of said land for pasturage should be considered in connection with what his necessary loss was by reason of moving said cattle, said loss not to exceed the actual loss sustained, if any.

The appellee contends that the right of recovery depends upon one act, that is, the pollution of the stream, and the verdict of the jury that no damage had accrued, the erroneous charges, if any, are harmless and the judgment should be affirmed. This contention would be correct if it could be said the verdict was not influenced by the charge. The case was not submitted on special issues, and what effect the errors in the charge had upon the jury in determining that the pollution of the stream did not materially injure the plaintiff, can not be definitely told. The main issues in the case were, did defendant materially pollute said stream to plaintiff's damage, and if so, to what extent? To clearly present these issues to the jury admits of some difficulty and we think the court in charging the jury has erred, as indicated, and therefore the judgment will be reversed and cause remanded.

## ON REHEARING.

The plaintiff in his petition alleged various items as to how he was damaged, among which was the destruction of growing oat crop on fifteen acres of land, growing Johnson grass crop on 35 acres of land, and the destruction of fish which injured his fishing privileges in said creek. The court in its general charge presented each of these items separately and distinctly, so that the jury in considering them could not have possibly gotten them confused with the other items of damage presented, or with each other, and their verdict was in effect that plaintiff did not suffer damage as to either of them, which finding is supported by the evidence. The error in the court's charge, on which a reversal was based, related alone to damages to cattle and which in no way was calculated to affect the finding as to the crops of oats and grass and fish. Such being the condition of the record showing that plaintiff has had a fair and impartial trial as to those items, he should not be allowed to have another chance to recover as to them. Therefore, the judgment heretofore rendered will be changed, affirming as to said items, and reversing as to the remainder of said items. The motion is granted in part and overruled in part.

*Reversed in part and affirmed in part.*

Writ of error refused.