**GLADIOLA BISCUIT COMPANY, a corporation, Plaintiff,**

v.

**SOUTHERN ICE COMPANY, a corporation, Defendant.**

Civ. A. No. 1311.

United States District Court
E. D. Texas,
Sherman Division.
June 19, 1958.

C. H. Gillespie, Jr. (of Gillespie, Gillespie & Robinson), Sherman, Tex., for plaintiff.

J. Edwin Fleming (of Coke & Coke), Dallas, Tex., for defendant.

SHEEHY, Chief Judge.

Plaintiff, a Texas corporation, instituted this suit seeking to recover from the defendant, a Missouri corporation, damages for an amount in excess of $15,000 which it claims it suffered because of biscuits manufactured by it becoming contaminated with glass, which glass

plaintiff claims was in ice manufactured and sold by the defendant. The case was tried before a jury, and the jury returned a verdict in favor of the plaintiff in the amount of $6,096.15. The plaintiff has filed a motion for judgment on the verdict and the defendant has filed a motion for judgment in accordance with its motion for a directed verdict filed at the close of all the evidence as authorized by Rule 50(b), F.R.C.P., 28 U.S.C.A. These motions and the questions presented thereby are the matters now before the Court for determination.

The undisputed evidence shows that at all times pertinent hereto and for sometime prior thereto plaintiff was engaged in the manufacture of refrigerated biscuits to be distributed in sealed cartons to the general public as food for human consumption. In manufacturing the biscuits the plaintiff used as one of the ingredients thereof ice that was crushed very fine and which was commonly called "Snow Ice." The ice was placed by plaintiff in its vat or mixing machine with other ingredients and thus became an integral part of the biscuits. At all times pertinent and for sometime prior thereto the defendant was engaged in the manufacture and sale of ice, including "Snow Ice." For sometime prior to September 5, 1957, the plaintiff had been purchasing the ice it used in the manufacture of its biscuits from C. L. Crossland, d/b/a Crossland Ice Service, hereinafter referred to as Crossland, who would deliver ice to plaintiff at its plant in bags containing approximately 100 pounds. For sometime prior to September 5, 1957, Crossland purchased the ice he in turn sold and delivered to plaintiff from the defendant. Crossland would go to defendant's plant where the defendant would deliver the ice to Crossland's truck in bags containing approximately 100 pounds. Crossland would then transport in his truck to plaintiff such of the ice as plaintiff desired to purchase. On September 4, 1957, plaintiff purchased several 100 pound bags of such ice from Crossland and on September 5, 1957, again purchased several 100 pound bags of such ice from Crossland. All of the ice that the plaintiff purchased from Crossland on September 4 and September 5, 1957, was purchased by Crossland from defendant in bags containing 100 pounds.

There was evidence that on September 4, 1957, the plaintiff manufactured and processed a substantial number of biscuits, and in so doing used some of the ice that it purchased from Crossland on that date; that on the morning of September 5, 1957, and after plaintiff had manufactured biscuits on that day, the plaintiff discovered some glass in the biscuit dough and upon inspection found some glass in the ice it had purchased from Crossland, as aforesaid; that the plaintiff thereupon destroyed the biscuits and dough it had manufactured and processed on September 5, 1957; and that the biscuits and dough it had manufactured and processed the day before had already been distributed to the trade, so the defendant immediately took steps to and did recall said biscuits manufactured on September 4, 1957, and distributed to the trade, which biscuits it recalled were subsequently destroyed by plaintiff. It was admitted that the cost to plaintiff of the biscuits and dough manufactured by it on September 5, 1957, prior to the discovery of the glass and which were destroyed, as aforesaid, was the sum of $2,966.29. Plaintiff offered evidence to the effect that the cost to it of the biscuits manufactured on September 4, 1957, included distribution cost and the cost of recalling said biscuits from the trade was a sum in excess of $12,000.

There was evidence, some of which was circumstantial, that the ice purchased by plaintiff from Crossland on September 4, 1957, as well as the ice purchased by it from Crossland on September 5, 1957, contained glass. In seeking to hold the defendant liable herein plaintiff relies on the rule announced by the Supreme Court of Texas in Jacob E. Decker & Sons v. Capps, 139 Tex. 609,

164 S.W.2d 828, 142 A.L.R. 1479 (hereinafter referred to as the Decker case) to the effect that a nonnegligent manufacturer, who processes and sells contaminated food to a retailer for resale for human consumption, is liable to the consumer for the injuries sustained by him as a result of eating such food. Plaintiff admits that there was no privity of contract between the plaintiff and the defendant as to the ice purchased by plaintiff from Crossland on September 4 and 5, 1957, as aforesaid. Plaintiff does not attempt to hold the defendant on the basis of negligence.

At the conclusion of all the evidence defendant filed a motion for a directed verdict and although I had grave doubts as to the applicability of the Decker rule to the facts in this case, I reserved decision on the motion for directed verdict and submitted the case to the jury.

■ The jury was charged, in effect, that in order to find for the plaintiff it would have to find from a preponderance of the evidence: (1) that at the time said ice was sold and delivered by defendant to Crossland it contained glass; (2) that the defendant, at the time the ice in question was delivered by it to Crossland, knew that such ice or a part thereof was to be used by plaintiff in the manufacture of its biscuits and as an ingredient thereof; and (3) that as a result of the ice containing glass plaintiff suffered damages. In my opinion there was sufficient evidence to warrant a finding favorable to the plaintiff as to each of said three elements. The jury having found in favor of the plaintiff, it will have to be assumed for the purpose of the questions here to be decided that the jury found in favor of the plaintiff as to each of said elements.

If the defendant was not entitled to a directed verdict at the close of all the evidence, plaintiff is entitled to judgment on the verdict of the jury. In its motion for judgment in accordance with its motion for directed verdict defendant assigns several grounds. The only ground of probable merit is the contention to the effect that the Decker rule has no application to the facts in this case.

In the Decker case the manufacturer of sausage sold by it to a retailer for resale for human consumption was held liable to a consumer for injuries sustained as a result of eating the sausage, which was contaminated, under an implied warranty of fitness for human consumption imposed by operation of law as a matter of public policy. On the same day it handed down the decision in the Decker case the Supreme Court of Texas in Griggs Canning Co. v. Josey, 139 Tex. 623, 164 S.W.2d 835, 142 A.L.R. 1424, held a retailer liable to a consumer for injuries sustained as a result of eating spinach from a can purchased by the consumer from the retailer on the basis of a warranty of fitness for human consumption imposed by law as a matter of public policy even though the spinach was in a sealed container, bearing the label of the manufacturer, purchased by the retailer from the manufacturer and the retailer had no means of knowing that the spinach in said can was unfit for human consumption. It is to be noted that in both the Decker case and Josey case the implied warranty of fitness for human consumption imposed by law as a matter of public policy was in favor of and for the benefit of a consumer. In the instant case the question to be decided is whether there was an implied warranty imposed on the defendant by operation of law as a matter of public policy to the effect that the ice in question, which was sold to Crossland with knowledge that same would be resold to plaintiff by Crossland for use by plaintiff in the manufacture of its biscuits and as an ingredient thereof, was not contaminated with glass or any other substance rendering said ice unfit for human consumption. The question here does not involve the possible liability of this defendant to Crossland had plaintiff sued Crossland and the defendant impleaded by third party action or other-

wise by Crossland, but whether defendant is liable to the plaintiff in a direct action.

■ This Court's jurisdiction being based on diversity of citizenship of the parties, the question must be decided in accordance with the substantive law of Texas.[1] Neither party has cited a Texas decision on the precise question, and I have been unable to find one. It, therefore, becomes my duty to decide the question as I determine, as best I can, what the Texas courts would decide.[2]

■ In contending that the Decker rule applies here the plaintiff relies heavily on the following statement of the court in Bob's Candy & Pecan Co. v. McConnell, Tex.Com.App., 140 Tex. 331, 167 S.W.2d 511, 514:

"Anyhow, public policy imposes on the seller of food, under circumstances such as we have in this case, a warranty that the article sold is fit for human consumption. Jacob E. Decker & Sons, Inc., v. Capps, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479."

A careful study of the opinion in the McConnell case reveals that this quoted statement of the court was a gratuitous statement by the court uncalled for by the questions presented to the court for decision. That being true, the quoted statement is not considered as binding authority.[3]

In the McConnell case, Bob's Candy & Pecan Company of Albany, Georgia, had purchased through its broker in Austin, Texas, a carload of pecans from McConnell. The McConnells shipped the pecans from San Saba, Texas, to the Candy Company in Albany, Georgia, and drew a draft on the Candy Company for the sale price of the pecans and attached to it the weight certificate and a shipper's order bill of lading. When the pecans arrived in Georgia, they were inspected by the Candy Company and found to be unfit for human consumption. However, the draft had been paid by the Pecan Company's Albany bank. Within a day or two after the Candy Company inspected the pecans, agents of the Food and Drug Administration, United States Department of Agriculture, inspected the pecans and then filed libel proceedings in the United States District Court for the Middle District of Georgia to condemn them because of their unfitness. The Federal Court in Georgia then found the pecans to be unfit and adjudged them to be condemned and forfeited to the United States for destruction. Pursuant to that order of that court said pecans were destroyed. The Candy Company then sued McConnell along with McConnell's bank of San Saba to recover the amount of the draft that had been paid and the freight charges it had paid on the shipment on the theory *that McConnell, in placing the pecans in interstate commerce for shipment from Texas to Georgia, warranted that they were merchantable and fit for human consumption under the United States Pure Food Law.* The following excerpt from the opinion of the Commission of Appeals shows the basis on which that court held McConnell liable to the Candy Company:

"The Court of Civil Appeals correctly held that the evidence is not conclusive as to whether the McConnells received a copy of the sales memorandum executed by Mayne & Co. covering the shipment to petitioner. However, that issue is wholly immaterial to a determination of the merits of this case. The McConnells shipped the pecans to petitioner, a pecan sheller, in interstate commerce, knowing they were to be processed and sold by it for human

---

1.  Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

2.  Rayonier, Inc., v. Bryan, 5 Cir., 249 F. 2d 405, 408, and Kirby Lumber Corp. v. Laird, 5 Cir., 231 F.2d 812, 814.

3.  Indiviglio v. United States, 5 Cir., 249 F.2d 549, 561.

consumption. *They impliedly warranted thereby that the pecans were fit for that purpose, under the United States Food and Drugs Act.* Kansas City Wholesale Grocery Co. v. Weber Packing Corp., 93 Utah 414, 73 P.2d 1272.

"On this issue, it is asserted that the McConnells parted with title to the pecans in San Saba when they indorsed the bill of lading to the San Saba bank. That proposition is likewise immaterial because, *by indorsing the bill, they warranted that the pecans were merchantable and fit for human consumption.* § 114, Title 49, U.S. Code Annotated; Kansas City Wholesale Grocery Co. v. Weber Packing Corp., supra. See Berlowitz v. Standley, 117 Tex. 362, 5 S.W.2d 963." (Emphasis supplied.)

It must be borne in mind that the shipment of the pecans in question moved in interstate commerce. It is obvious that the Candy Company sought to hold McConnell liable because of an implied warranty under the United States Food and Drugs Act that the pecans were fit for human consumption and that is the basis on which the court held McConnell liable to the Candy Company. The Candy Company was making no contention that the implied warranty rule of the Decker case applied to its case. Therefore, the quotation from the opinion in the McConnell case, first above quoted, which statement was the next paragraph of the court's opinion immediately following the last above quoted excerpt from the opinion in that case, did not pertain to the question presented to the court for decision.

More than eight years subsequent to the decision of the Commission of Appeals in the McConnell case the Supreme Court of Texas in Bowman Biscuit Company of Texas v. Hines, 151 Tex. 370, 251 S.W.2d 153, had before it the question as to whether the wholesaler was liable to the consumer for damages resulting to him by reason of the eating of contaminated food purchased from a retailer who had in turn purchased same from the wholesaler in a sealed package in which same was in when purchased by the consumer from the retailer under an implied warranty imposed by law as a matter of public policy. The court in a five to four decision answered the question in the negative and refused to extend the rules of implied warranty imposed by law as a matter of public policy announced in the Decker case and the Josey case to the wholesaler. Although it might be difficult to understand why the majority, recognizing the implied warranty imposed on the manufacturer by the Decker case and the implied warranty imposed on the retailer by the Josey case, would refuse to apply such implied warranty rule to the wholesaler of foods sold for human consumption, the fact that the majority of the court refused to extend such rule of implied warranty to the wholesaler is strong evidence that the Supreme Court of Texas is reluctant to make an extension of the implied warranty rule. It is interesting to note that the McConnell case was not mentioned or referred to in any of the opinions in the Bowman Biscuit Company case.

There are other Texas cases which indicate the reluctance of the Texas courts to extend the Decker rule of implied warranty. In Jax Beer Co. v. Schaeffer, Tex.Civ.App., 173 S.W.2d 285 (Writ of Error Refused W.O.M.) a waiter was injured by an exploding bottle of beer. The court in refusing to extend the Decker rule to cover that situation pointed out that (a) there was no sale to an ultimate consumer and (b) any damage that may have resulted to the waiter did not result in the consumption of a food product. For a similar holding see Anheuser-Busch, Inc., v. Butler, Tex. Civ.App., 180 S.W.2d 996 (no writ history). In Brown v. Howard, Tex.Civ. App., 285 S.W.2d 752, 754 (Writ of Error Refused N.R.E.) the court refused to extend the Decker rule so as to permit the owner of dairy cows poisoned by an insecticide solution to recover from the manufacturer in the absence of privity

of contract. In so doing the court stated: "We feel unauthorized on the basis of the Decker case to recognize a further exception to the general rule and impose liability in this case absent privity of contract."

■ The Supreme Court of Texas, for reasons of public policy, by its decision in the Decker case has provided a remedy for consumers who are injured as a result of eating contaminated food and who, because of lack of privity of contract, are unable to rely on the usual contractual warranties. Although there is little, if any, basis for such in the common law the imposition of liability without fault upon manufacturers of food products placed on the market for human consumption was considered necessary to give consumers an adequate remedy. In the instant case the relationship between the plaintiff and the defendant is not that of manufacturer and consumer as was the situation in the Decker case nor is the relationship that of retailer and consumer as was the situation in the Josey case. Furthermore, in the instant case we do not have a situation where a consumer is seeking damages by reason of injuries suffered as a result of eating contaminated food as was the situation in both the Decker case and the Josey case. To hold that the implied warranty rule of either the Decker case or the Josey case applies to the facts in this case and imposes liability on the defendant would be an extension of the rule beyond the limits said rule has so far been applied by the Texas courts. The refusal of the Supreme Court of Texas in the Bowman Biscuit Company case, supra, to apply said rule against a wholesaler who had sold contaminated food to a retailer who in turn had sold same to the injured consumer in an action by the consumer against the wholesaler and the refusal of the intermediate appellate courts of Texas to apply the rule to the fact situations presented in the Schaeffer, Butler and Howard cases, respectively, to me clearly indicates that the Texas courts would not, under the facts in this case, impose on the defendant an implied warranty, as a matter of public policy, that the ice in question was free from glass or any other substance harmful for human consumption. So believing, I conclude and hold that the defendant under the undisputed evidence in this case is not liable to the plaintiff and that defendant's motion for directed verdict filed at the close of all the evidence should have been granted.

Plaintiff's motion for judgment on the verdict will be overruled and defendant's motion for judgment in accordance with its motion for directed verdict filed at the close of all the evidence will be granted.