### J. R. MAYHAN ET AL. v. R. C. McMANUS ET AL.

Decided June 22, 1910.

**1.—Limitation—Partition—Actual Possession.**

When a tract of land has been partitioned between several owners, subsequent possession on one of the subdivisions for ten years will not give the occupant title by limitation to any portion of the 160 acres, claimed by him under the ten years statute, which extended over upon another subdivision and which was not within the boundaries of the particular subdivision on which his enclosures were situated, and of which he held no actual possession.

**2.—Same—Conflicting Tracts—Constructive Possession.**

The boundaries of a tract of 160 acres claimed under the ten years statute of limitation conflicted with a tract of 100 acres sold by the owner, out of a larger tract, and also extended over upon the land of another and different owner; the actual possession and enclosures of the adverse occupant of the 160 acres was confined to that portion of the land included within the conflict with the 100-acre tract. Held, the adverse possession could not be extended by construction beyond the boundaries of the 100-acre tract.

Error from the District Court of Liberty County. Tried below before Hon. L. B. Hightower.

*Jacob C. Baldwin,* for plaintiffs in error.

*Stevens & Pickett,* for defendant in error.

PLEASANTS, CHIEF JUSTICE.—R. C. McManus and others, claiming under R. O. W. McManus and J. P. Viguerie, brought suit in the District Court of Liberty County in the form of an action of trespass to try title against G. W. Burkitt, L. J. Barnes, S. B. Arrendell, J. R. Mayhan and J. T. McWhorter to recover the north two-thirds of the Reuben Barrow one-third league of land in Liberty County.

Subsequently G. W. Burkitt brought suit in said court against Mrs. E. F. Arrendell, J. T. McWhorter and J. R. Mayhan to recover the south one-third of said survey, less such portion thereof as is included in a 100-acre tract of said survey known as the Nelson tract. Upon motion of the defendants these two suits were consolidated and tried as one. The defendants, E. F. Arrendell, J. T. McWhorter and J. R. Mayhan each filed an answer containing a general demurrer, and plea of not guilty, and a plea of title by limitation to a portion of the land in controversy. The trial in the court below without a jury resulted in a judgment in favor of the plaintiffs, McManus and others, for the north two-thirds of said one-third league, and in favor of plaintiff, Burkitt, for all of the south one-third of said survey line east of the east line of the Nelson 100-acre tract, except such portion thereof as

might be found to be in the actual possession of the defendant E. F. Arrendell.

The facts disclosed by the record are as follows:

On January 14, 1864, R. O. W. McManus and J. P. Viguerie acquired title to the north two-thirds of the Reuben Barrow survey. R. C. McManus and the other plaintiffs in the first of the consolidated causes before mentioned, now hold this title. The title to the south one-third was acquired by Watson Hardin sometime prior to 1870. In the year last named, by a partition proceeding in the District Court of Liberty County, the title to said one-third of the survey was vested in Mary E. Minter, a daughter of said Hardin. In 1878 Mary E. Minter joined by her husband, J. C. Minter, conveyed to William Nelson a tract of 100 acres on the Reuben Barrow survey. As described in this deed the 100 acres thereby conveyed includes a portion of the north two-thirds of the survey. In 1882, Mary E. Minter and her husband conveyed the south one-third of the survey to Leon and H. Blum. Plaintiff, G. W. Burkitt, holds the Blum title.

The Reuben Barrow survey is bounded on the west by the San Jacinto river and extends back from the river between parallel lines for a distance of 5,950 varas on its north line and 5,434 varas on its south line. The north and south lines of the survey run due east and west. The length of the east line of the survey, which runs north and south, is 1,444 varas. The one-third of the survey conveyed to Hardin and subsequently acquired by Blum is described in the deed to Hardin as follows:

"Beginning at the S. W. corner of said third of a league. Thence up East San Jacinto river with its meanderings to a point thereon from which a line running east to the eastern line; thence to the southeast corner of said third of a league; thence with the south line of said third of a league to the beginning, so as to embrace 492 acres."

The boundaries of the land conveyed by Mrs. Minter and husband to Nelson by their deed of date February 28, 1878, before mentioned, are set out in said deed as follows:

"Beginning on the bank of said river, at the southwest corner of said third of a league. Thence east with the south line of said tract 750 varas to a stake for corner. Thence north 750 varas to a stake for corner. Thence west 800 varas to said river. Thence down said river with its meanderings to the place of beginning."

Some time in the year 1891, Tom Lee and wife moved upon the south one-third of the survey and established a home. Their enclosure contained twelve or fifteen acres. They continuously occupied and claimed this place until 1900, when they sold their improvements to S. Herndon, and at the same time conveyed to Herndon 160 acres of land on the Reuben Barrow survey described as follows: "Beginning at a stake on the east bank of East San Jacinto river, a cypress stump 70 in. in diameter near this corner; thence east, at 460 vrs. crossed a branch and an old road, and at 1260 vrs. in all set a stake for corner, from which a sweet gum, 10 in. in diameter, marked X, bears N. 40 W. 2 vrs., and a gum, 10 in. in diameter, marked X, bears S. 40 E. 5 vrs.; thence south 637 vrs. to the north boundary line of said Blum's 492 acres, set a stake, from which a black gum, 10 in. in diameter,

marked X, bears S. 2 W. ¾ vrs., another sweet gum, 10 in. in diameter, marked X, bears E. 8 vrs.; thence west 1048 vrs. to a stake, Blum's northwest corner, white oak and gum marked X near the corner; thence up the river to the beginning."

Herndon took immediate possession of the place theretofore occupied by Lee, and occupied and claimed it until January 12, 1903, when he sold to S. B. Arrendell. His deed to Arrendell described the land thereby conveyed just as it is described in the deed to him, as above set out. S. B. Arrendell and wife E. F. Arrendell, then took possession of the twelve or fifteen-acre tract and continued to occupy it until they were divorced on August 21, 1906. In this divorce proceeding the place was set aside to appellant, E. F. Arrendell.

On January 21, 1904, S. B. Arrendell and wife conveyed to J. R. Mayhan sixty acres of the Barrow survey described as follows: "Sixty acres out of the north side or corner of 160-acre tract we now own, said 160-acre tract being in the southwest corner of the Reuben Barrow one-third league of land in Liberty County."

On December 10, 1904, the said Arrendell and wife conveyed to J. T. McWhorter fifty acres of the said survey described as follows: "Fifty acres of land off of the south side of our 160-acre tract lying and being situated in Liberty County, Texas, in the southwest corner of the Reuben Barrow survey."

The exact location of the premises actually occupied by Lee, and subsequently by Herndon and Arrendell, is not shown, but it appears that the house so occupied by them was within the boundaries of the Nelson 100-acre tract and on that portion of said tract south of the north line of the south one-third of the Barrow survey. There is no evidence that any part of the land in controversy in this suit was ever in the actual possession of Lee, Herndon or Arrendell.

Upon this evidence no other judgment than ·one in favor of plaintiffs could have been properly rendered. The limitation title asserted by the appellants depends upon the possession of Lee, Herndon and Arrendell, and unless by such possession, title by limitation was acquired by Arrendell to 160 acres, which included land on said survey outside of the boundaries of that portion of the Nelson tract south of the north line of the south one-third of the survey, they are not entitled to hold under their pleas of limitation any of the land claimed by the plaintiffs. There is evidence tending to show that the land claimed by Lee, Herndon and Arrendell successively, was a tract of 160 acres in the southwest corner of the survey described as follows: "Beginning on the east bank of East San Jacinto river at the southwest corner of said Barrow survey; thence east with the south boundary line of said survey, 1163 vrs. to stake for corner, from which a pine bears N. 3 deg. 6 vrs., a twin magnolia bears S. 65 W. 12 vrs.; thence north 750 vrs. to stake for corner; thence west parallel with the south boundary line to stake for corner on the east bank of said river; thence down said river to the place of beginning."

The original survey having been subdivided, as before shown, long prior to the assertion by Lee of his claim to this 160-acre tract, under the well settled rule of decision in this State, he could not acquire title by limitation to any portion of said 160 acres of which he did

not hold actual possession and which was not within the boundaries of the prior subdivision of the survey upon which the premises occupied by him were situated.

Actual possession by Lee and his vendees of the land on the Nelson tract was no notice to Burkitt of their claim to any portion of Burkitt's land on the south one-third of the survey which was not included in the boundaries of the Nelson tract; nor was such actual possession and occupancy of land on that portion of the south one-third of the survey notice to the owners of the north two-thirds of the survey that such occupants were claiming a portion of their land.

The actual possession of Lee and his vendees being confined to that portion of the Nelson tract south of the north line of the south one-third of the survey such possession could not be extended by construction to include land east of the east line of said tract, nor north of the north line of the south one-third of the survey. Turner v. Moore, 81 Texas, 206; Polk v. Beaumont Pasture Co., 26 Texas Civ. App., 242 (64 S. W., 58).

It is unnecessary to discuss the several assignments of error presented by appellants in detail. None of them, in our opinion, is meritorious, and, as before said, no other judgment could have been properly rendered upon the facts shown by the evidence than one in favor of appellees, and therefore the judgment of the court below should be affirmed, and it has been so ordered.

*Affirmed.*

Writ of error refused.