STEVENS et al. v. CROSBY et al.   (No. 289.)

(Court of Civil Appeals of Texas.   El Paso. March 5, 1914.   On Rehearing, · April 23, 1914.)

1. BOUNDARIES (§ 3*) — CONFLICTING ELEMENTS—CALLS FOR COURSE AND DISTANCE—CALLS FOR MONUMENTS.

Where there is a conflict between calls for course and distance in grants of adjacent lands and calls therein for the bank of an old bed of a river as the boundary between the grants, the latter must prevail.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 3–41; Dec. Dig. § 3.*]

2. BOUNDARIES (§ 37*) — EVIDENCE — SUFFICIENCY.

In trespass to try title involving the location of a boundary between adjacent grants, evidence *held* to sustain the finding that the junction of two river beds forming the boundary was at a designated point as claimed by plaintiff.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

3. APPEAL AND ERROR (§ 1002*)—VERDICT—CONCLUSIVENESS.

A verdict on conflicting evidence will not be disturbed on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

4. BOUNDARIES (§ 32*)—ISSUES, PROOF, AND VARIANCE.

Where, in trespass to try title, the controlling issue was the location of an old bed of a river with reference to the lands in controversy, and not with reference to calls for course and distance, failure of plaintiff to prove that the course of the old bed was along the calls for course and distance given in his pleadings did not amount to a variance between the pleadings and the proof.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 145; Dec. Dig. § 32.*]

5. PLEADING (§ 374*)—ISSUES, PROOF, AND VARIANCE.

Though the pleadings and proof must correspond, the substance of the pleadings only need be proved.

[Ed. Note.—For other cases, see Pleading, Cent..Dig. §§ 1217–1223; Dec. Dig. § 374.*]

6. EVIDENCE (§ 353*) — BOUNDARIES—DECLARATION OF FORMER OWNER—ADMISSIBILITY.

Where, in trespass to try title, the issue involved was the location of an old bed of a river, and defendant claimed under a town to which

a grant was made, bounded by the old bed, a statement in a deed executed by the town with reference to the location of the old bed was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1404–1428, 1430, 1431; Dec. Dig. § 353.*]

7. BOUNDARIES (§ 32*)—PLEADINGS—AMENDMENTS—ISSUES.

Where, in trespass to try title involving the issue of the location of an old bed of a river forming the boundary between adjacent grants, the fact that plaintiff, by an amended petition, demanded less land than he was lawfully entitled to recover did not prevent him from proving the true boundaries of his grant as determined by the location of the bed.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. § 145; Dec. Dig. § 32.*]

8. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL OF INSTRUCTIONS COVERED BY CHARGE.

It is not error to refuse a requested charge covered by a correct charge given.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

9. TRIAL (§ 191*) — INSTRUCTIONS—COMMENT ON EVIDENCE.

Requested instructions assuming facts not in evidence are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 420–431, 435; Dec. Dig. § 191.*]

10. ADVERSE POSSESSION (§ 110*)—PLEADING —DEFENSES.

Where, in trespass to try title, defendant relied on the defense of limitations, and showed that he and his predecessors in title had claimed the land in controversy under deeds duly registered, and had paid the taxes thereon for about 19 years, and that the actual possession during that period was on land within the grant relied on by plaintiff, defendant could not be deprived of his right to rely on limitations by the fact that plaintiff filed an amended petition so describing his land as not to include the land so occupied.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 636–645; Dec. Dig. § 110.*]

11. ADVERSE POSSESSION (§ 100*) — ACTUAL POSSESSION—CONSTRUCTIVE POSSESSION.

A grantee who takes actual possession of a part of land conveyed by his deed, duly recorded, acquires thereby constructive possession to the limits of the boundaries specified in the deed, though the deed includes land in a prior grant to another who has not taken actual possession of any part of the grant, and, where such possession continues undisturbed for the statutory period, he acquires title to the entire tract described by the deed.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 547–574; Dec. Dig. § 100.*]

12. EVIDENCE (§ 433*)—PUBLIC RECORDS—PAROL EVIDENCE.

A map which is an archive of the land office may be shown by parol evidence to be incorrect.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1990–2004; Dec. Dig. § 433.*]

13. APPEAL AND ERROR (§ 719*)—QUESTIONS REVIEWABLE—INSTRUCTIONS—OBJECTIONS.

The correctness of a charge will not be considered on appeal, where no assignment of error relating thereto was filed in the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. § 719.*]

Higgins, J., dissenting in part.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

Appeal from District Court, El Paso County; Dan M. Jackson, Judge.

Action by Josephine Crosby and others against H. B. Stevens and others. From a judgment for plaintiffs, defendants appeal. Reversed and remanded.

Millard Patterson, T. A. Falvey, J. A. Buckler, and J. F. Woodson, all of El Paso, for appellants. Stanton & Weeks, McBroom & Scott, and D. Storms, all of El Paso, for appellees.

HIGGINS, J. Appellees brought this suit in trespass to try title to recover survey No. 144 on the north bank of the Rio Viejo, in El Paso county, patented to Juan and Jacinto Ascarate on September 14, 1886, described in first amended original petition as follows: "Beginning at a cottonwood post on the bank of the Rio Viejo, south 545 varas from the northeast corner of the G. M. Collingsworth survey No. 14; thence down the north bank of the said Rio Viejo following its meanders, as follows: North 73° east 180 varas; south 83° east 353 varas; thence south 23° east 332 varas; thence south 22° west 92 varas; thence south 1° west 126 varas; thence south 24° east 166 varas; thence south 41° east 138 varas; thence south 43½° east 74 varas; thence south 76° east 185 varas; thence south 64½° east 490 varas to a stake set in the present county road; thence south 62° 41' east 584.2 varas; thence south 67° 31' east 270 varas to a stake set on the G. H. & S. A. Ry. right of way; thence," etc.

The foregoing portion of field notes is quoted in view of the filing of a trial amendment to the petition to which attention is hereafter directed.

The land was surveyed and patented by virtue of an act of confirmation of the Legislature approved February 11, 1858. 4 Gammel's Laws, p. 1027. This act relinquishes the right of the state in several tracts of land to various claimants, including Juan and Jacinto Ascarate, to whom three leagues were relinquished called "El Rancho de Ascarate." The lands were not specifically described, and the act further provided that the lands should be surveyed, platted, and patents issued in accordance with existing laws. In accordance with this act, the land was surveyed by one Randolph in 1886, and, as stated above, patented September 14, 1886.

By an act approved January 31, 1854 (4 Gammel's Laws, 42), two leagues of land were granted to the inhabitants of the town of Ysleta, "commencing at the northwest [should be southwest] corner of the town tract of Ysleta on the Rio Grande; thence up said river with its meanders to the point where the Rio Grande and the Rio Viejo separate; thence down the east bank of the Rio Viejo to the southwest corner of survey number twelve, located in the name of T. H. Dugan, etc." Some time prior to the grants to the Ascarates and inhabitants of Ysleta, the Rio Grande had changed its course, and the term "Rio Viejo" is a Spanish one meaning "Old river." The Ascarate grant is situate north and northwest of the Ysleta grant. It will be noted that the north line of the western portion of the Ysleta grant is the east (it would more properly be termed north) bank of the Rio Viejo. The south line of the Ascarate is likewise the east (more properly north) bank of the Rio Viejo, and Randolph, when he surveyed the grant, undertook to locate and describe the meanders of the Old river by course and distance.

The defendants in the cause, appellants here, disclaimed as to all of the land sued for, except a certain parcel, which they described by metes and bounds, and claimed under chain of title emanating from Ysleta as a part of the grant to its inhabitants aforesaid. The parties entered into a stipulation by which it was agreed that as to the premises involved, and which, in fact, were situate within the boundaries of the Ascarate grant, claimed by plaintiffs, that the record title was in plaintiffs, and, if shown, in fact, to be situate within the limits of the Ysleta grant, that the record title was in defendants.

[1] The south line of the Ascarate grant, as described by course and distance in the survey and patent, embraces the land claimed by appellants as a part of the Ysleta grant. It is patent from the foregoing statement that the east or north bank of the Rio Viejo is the dividing line between the Ascarate and Ysleta grants eastward or downward from the junction of the New and Old rivers, and, in case of conflict between the course and distance calls in the south line of the Ascarate patent and the Rio Viejo, the latter will prevail, and that the Ysleta grant would take precedence over the Ascarate to the extent of the conflict. As to this phase of the case, the suit thus resolves itself into one of boundary; the issue being as to the true location of the Rio Viejo downward from its junction with the new river at the date of the Ysleta grant in 1854. The foregoing statement will not adequately and fully portray the location of the lands in controversy and the two original grants, but it could not be done completely without incumbering the record with maps. It is deemed sufficient, however, for the purposes of this opinion.

The Ascarate grant, as sued for and described in the petition, followed the description given in the patent, and which, as stated, was based upon Randolph's survey in 1886. By a trial amendment appellees changed the calls for course and distance of the south line of the Ascarate, so as to circumscribe and lessen the area of land claimed in the southern portion of the grant, and disclaimed as to the land south of the line fixed by the trial amendment. This amend-

ment reads: "That said plaintiffs so amend their first amended original petition so that the calls beginning at the point 545 varas south of the northeast corner of the Collingsworth survey No. 14, shall read as follows, to wit: N. 73 deg. E. 180 varas, S. 83 deg. E. 453 varas, S. 23 deg. E. 332 varas, S. 22 deg. W. 94 varas, S. 1 deg. W. 65 varas, N. 60 deg. 30′ E. 214.5 varas; thence S. 76 deg. E. 185 varas, thence S. 64 deg. 30′ E. 490 varas crossing the railroad, S. 12 deg. W. 104 varas, S. 71 deg. E. 140 varas, S. 25 deg. E. 120 varas, S. 33 deg. 30′ E. 53 varas; thence S. 55 deg. E. 540 varas, S. 67 deg. E. 270 varas, from which said 270-vara call the line follows as in the 'first amended original petition.' That said plaintiffs further represent that, by reason of an erroneous survey of said line comprising the south boundary line of the Ascarate grant near the beginning point thereof, as above shown, the plaintiffs believed that the land lying south of said line and survey above set forth was not within the boundaries of the Ascarate grant, and have filed in other causes involving the title to said grant pleadings setting forth the said line above described as the south boundary line of the Ascarate grant and the north bank of the Old river; that, by reason of the fact that said land lying between the said boundary line set forth above and the more recent surveys made by R. J. Owen, J. W. Eubank, county surveyor, and Deputy County Surveyor F. E. Baker, correcting the former survey as shown by the above line, the said plaintiffs inserted in their said first amended original petition the field notes of such corrected survey; and plaintiffs further aver that they hereby disclaim for the purpose of this suit only any title, ownership, or possession of the land and premises lying south of the boundary line hereinbefore set forth and shown by the foregoing field notes, and between same and the lines as recently run by the surveyors aforesaid, and they further reserve all rights which were available to them under their former pleadings in this cause, except their claim of and to the property hereinbefore described and situated south of the field notes hereinbefore set forth and the line as run by said recent surveys; but plaintiffs hereby reserve their right to show by the testimony heretofore introduced and by the testimony that may be introduced in the trial of this cause the true boundary line of the said Ascarate grant, and also the true boundary line of the Ysleta grant No. 2, as the same was run by the original surveys of the said grants upon which patents were issued and have been introduced in evidence; and plaintiffs further represent that this trial amendment is filed for the purposes of this suit only, and that said plaintiffs reserve all their rights in any other suits that are pending or may be brought by the plaintiffs in reference to the said grant made to Juan and Jacinto Ascarate, and in reference to the ownership of plaintiffs thereof, or as to any suits pending or that may be filed against the plaintiffs herein involving the title to said Ascarate grant. Wherefore the said plaintiffs pray judgment of the court decreeing them title to and possession of all the land and premises described in plaintiffs' first amended original petition filed in this cause on the 20th day of March, 1913, except as to the land and premises shown by the above amendment and disclaimer, and lying southerly of the field notes hereinbefore set forth."

The effect of the change in the course and distance calls is to lessen the conflict between the land originally claimed by appellees, and that of appellants, as the line fixed by the amendment was north of the south line as originally described by course and distance.

[2] The first four assignments question the sufficiency of the evidence, appellants' contention being:

First: "That the plaintiffs did not prove that the north line of the Rio Viejo extended along the line alleged by them, and consequently the verdict and judgment are contrary to, and not supported by, the evidence, and should have been for the defendants."

Second: "That the evidence clearly shows that the north bank of the Rio Viejo extended along the north line of tract claimed by defendants, and consequently the verdict and judgment should have been in their favor."

There is a mass of evidence in the record bearing upon the question at issue, viz., the location of the Rio Viejo in 1854 from its junction with the present bed of the Rio Grande, downward towards the mouth of the river. This evidence, for the most part, consists of numerous maps and testimony of various surveyors, detailing the result of their efforts to locate the true course of the Rio Viejo. To incumber the record with these maps and extended statement of the testimony of the various witnesses would be profitless. We will therefore confine ourselves to a brief statement of the salient features of the evidence regarded as supporting the verdict. An item of controlling importance is to first locate the junction of the Rio Viejo and present Rio Grande, and light is shed upon this question by deed from town of Ysleta to J. W. Tays, dated August 9, 1873, of a 600-acre tract of land described as "Beginning at a point on the Old river, set for the N. W. corner of lot No. 208 in the new division; thence N. 54° W. 720 varas; thence S. 15° E. 270 varas; thence S. 32° W. 200 varas; thence S. 64° W. 170 varas; thence S. 84° W. 160 varas; thence S. 62° W. 1,110 varas; thence S. 81° W. 240 varas *to the junction of Old and New river;* thence down the river S. 14° E. 300 varas," etc. At the end of the first call is a stone admitted to be in the bed of the Rio Viejo. W. J. Tays, it seems, was the official surveyor of

the town of Ysleta, and a map made by him fixes the junction at the point contended for by appellees. This deed and map is sufficient to support a finding that the junction of the two river beds was at the point contended for by appellees, instead of further westward and northward, as appellants contend.

As stated above, there is a stone at end of the first (N. 54° W. 720 varas) call in the Tays deed, and it is admitted that this is in the bed of the Rio Viejo; so, if it be that the course of the Rio Viejo from the Tays junction downward to this stone be such as to lie southward and eastward of the land in controversy, then necessarily it was situate in the Ascarate grant and not in the Ysleta. That it did so run is established: (a) By the Tays map aforesaid, upon which the course of the Rio Viejo is delineated as lying so as to embrace the controverted premises within the Ascarate grant. (b) By the testimony of Benigno Alderete, who, upon being shown the Tays map and his attention called to the Old river indicated thereon, was asked to state what it indicated and if he was familiar with the line of the Old river, stated: "Yes, I believe it is the Old river." He was then asked whether the Old river shown on the map represented the river he referred to when he was a boy and saw water in it and stated: "I believe it is." (c) By the testimony of the surveyor, Owen, according to whose testimony the Rio Viejo, as he identified same by appearances and indications upon the ground, lay to the southward of the line described by course and distance in the trial amendment as the south line of the Ascarate grant, and south and east of the land claimed and recovered by appellees.

[3] This court cannot lawfully, and will not, disregard the finding of the jury that the controverted premises were situate in the Ascarate grant, in the face of the evidence quoted. The vagrant, wandering nature of the Rio Grande river is well known, and the testimony in the record indicated many old river beds in this vicinity, and after this great lapse of time it is, of necessity, difficult, if not impossible, to definitely locate the course of the Rio Grande in 1854 between the Ascarate and Ysleta grants.

The jury heard all of the evidence, and, while they might not have been able to accurately determine the precise course of the Rio Viejo, yet by their verdict they necessarily found that the land lay to the northward and westward of the Rio Viejo, which would place it within the limits of the Ascarate, and without the Ysleta. Their finding is supported by the evidence indicated, and it will not be disturbed.

[4] What has just been said applies also to another position taken by appellants. It is embraced within their contention first above quoted, and, reduced to its last analysis, it

is that there was a failure of proof upon appellees' part, in that it is not shown that the course of the Rio Viejo was along the calls for course and distance given in their pleading. This is regarded as being without merit. The location of the Rio Viejo by course and distance is of no special or practical importance in determining the issues here presented. The controlling issue is the location of the Rio Viejo with reference to the land in controversy, and not with reference to the calls for course and distance. The location of the Rio Viejo would control the course and distance calls, and, if it lay south and east of the premises claimed by appellants, it placed same in the Ascarate grant, and it is immaterial whether or not its course corresponded with the course and distance which it is alleged to follow. It involves no question of variance or failure of proof as to the controlling issue in the case. The issue is not the location of the Rio Viejo by course and distance, but as regards the lands sued for. The issue was proven in favor of plaintiffs, when it was shown that it lay south and east of the land in controversy. Bank v. Webb, 128 S. W. 426; Smith v. Olsen, 92 Tex. 181, 46 S. W. 631, at second column page 633; Hanaford v. Morton, 22 Tex. Civ. App. 587, 55 S. W. 987, at second column page 988; Clark v. Hills, 67 Tex. 141, 148, 2 S. W. 356; Brown v. McDougal, 63 Tex. 193, 196; Duff v. Moore, 68 Tex. 270, 4 S. W. 530, 531.

[5] Those cases cited by appellants, in which it is broadly stated that the boundary lines proven must correspond with the description contained in the petition, are inapplicable to the state of facts here presented. While the allegations and proof must correspond, yet the substance of the allegations only need be proven. What is said above disposes of the questions presented by the first four assignments.

Under the views just expressed, the court did not err in refusing defendant's special charge No. 2, reading: "You will not consider in this case the statement made in the deed introduced in evidence from the town of Ysleta to J. W. Tays that the point at the south or southwest end of the call in same, extending S. 81° W. 240 varas from the west end of the 1,110 varas call was the junction of the Old river and the Rio Grande"—and special charge No. 3, reading: "You are charged that in the year 1854, when the Ysleta grant was confirmed, the west end of the Ysleta grant or place where the Rio Viejo separated from the Rio Grande was (and now is for the purposes of this case) more than one-third mile west of the west end of the land that is claimed by the defendants in this case and called in the evidence the Harris tract"—the refusal of which is made the basis of the fifth and sixth assignments.

[6] Since appellants hold under the town

of Ysleta, the statement in its deed to Tays with reference to the point of junction of the Old and New rivers was admissible.

[7] As stated above, the trial amendment did not preclude appellees from showing that the Rio Viejo lay to the south and east of land covered by the disclaimer; that the point in issue in this case is whether the land in controversy lies in the Ascarate or Ysleta grants, and this question is controlled by the location of the Rio Viejo on the ground.

· The effect of appellants' contention is that, if plaintiffs in a boundary suit sue for less land than they are lawfully entitled to recover, they would not be permitted to prove that the boundaries of their grant were more extensive and comprehensive than they had alleged. Manifestly such a position is not well taken. See authorities last above cited.

The fifth, sixth, seventh, and eighth special charges, the refusal of which is made the basis of the seventh, eighth, ninth, and tenth assignments, were likewise properly refused, for the reason that it was necessary only for plaintiffs to prove that the land claimed lay within the Ascarate grant, and this question was controlled absolutely by the location of the bank of the Rio Viejo; the trial amendment did not alter the fact that such location was the controlling feature in the case. ·

[8] Special charge No. 9 which reads, "You are charged that the bank mentioned by the witnesses as being north of the stone, the beginning corner of the land described in defendants' answer, was the north or northeast bank of the Rio Viejo in 1854, as shown by the evidence and the plaintiffs' pleadings, and, if you believe the same bank extended from said place in a westerly direction with the north line of the land claimed by defendants in their answer, you will find for defendants for said land," was properly refused, since the same bank found at defendants' beginning corner might have extended along the ·entire length of the line claimed by them as their north boundary, and still not have marked the course of the Rio Viejo upward. The bank mentioned westward may have been simply the bank of· foothills, and not of the Old river. Furthermore, the issue raised by this charge was fully and admirably covered in appellants' special charge No. 1 given by the court, and which reads: "You are charged that, if you believe from the evidence that in the year 1854, and prior to that time, the east bank or the northeast bank of the Rio Viejo was at the north line of the tract claimed by the defendants in this case, any ·change that may have occurred in the course of the Rio Grande after that time or after the time of its separation from the Rio Viejo would be entirely immaterial, and, if you believe that in 1854 the east bank or the northeast bank of the Rio Viejo was at the north or northeast line of the tract claimed by the' defendants in this case,.you will find

that the record title to the land claimed by the defendants in this case was in the town of Ysleta at the time of its conveyance to Fruedenthal in the year 1888, and will find for the defendants for the land claimed in their answer."

[9] Special charges Nos. 10 and 11 were properly refused; there being no evidence called to the attention of this court showing that any of the surveyors had arbitrarily left the bank of the Rio Viejo at defendants' beginning corner and sought a bank at some other place, or that field notes and maps had been made merely to support a theory, as was assumed in the charges. They violate the rule which forbids the court to comment upon the evidence.

[10, 11] The fourteenth assignment complains of the action of the court in peremptorily instructing against appellants upon the issue presented by their plea of the five-year statute of limitation; the fifteenth of the refusal of a peremptory instruction in their favor upon this issue; the sixteenth of the refusal of a special instruction submitting the issue to the jury.

The suit was filed July 6, 1909. Appellants, and those under whom they hold, have claimed the land in controversy, under deeds duly registered, paying taxes thereon when due, since May, 1889, when the deed from the town of Ysleta to appellants' grantor, Fruedenthal, was recorded. The land is specifically described in the deeds by metes and bounds.

Defendant Harris testified they had a tenant upon the land named Regalado who lived upon the same; that Regalado went there in 1889, and remained there until his death, 3 or 4 years ago. The trial was in 1913 which would fix his death in 1909 or 1910. According to this testimony, Regalado was upon the land continuously for 20 years, beginning 1889. According to the testimony of defendant Matthias, Regalado resided upon the land as their tenant for about 19 years prior to the filing of the suit. Other ·witnesses testified to occupancy by Regalado as a tenant of appellants. The house occupied by him was situate on the land which lay between the south line of the Ascarate grant, as described by course and distance in the first amended petition, and the line as described in the trial amendment, the title to which land was disclaimed by appellees in the trial amendment. The house was in a northerly direction from the junction of the Old and New rivers, as shown on the Tays map, and apparently upon land within the bounds of the Ascarate grant.

The fifteenth assignment may be disposed. of with the observation that an issue is raised as to the tenancy relationship of Regalado, which alone would render improper a peremptory instruction in appellants' favor upon issue of limitation.

:There is nothing in the record called to

our attention to show that in 1889 the appellees or their grantors were in actual possession of any part of the Ascarate grant, and the legal seisin which attached by virtue of their ownership was broken by the entry of Regalado, and appellants, by virtue of such entry, acquired constructive possession of all the land in the Ascarate grant to the extent of the boundaries called for in their deeds. Cunningham v. Frandtzen, 26 Tex. 38; Evitts v. Roth, 61 Tex. 84; Cantagrel v. Von Lupin, 58 Tex. 570; Wood on Limitations, § 259. Such actual possession of part, with resulting constructive possession to limits of the boundaries contained in their deed, continued undisturbed until the entry of one Calsadillas, who settled upon northwest corner of land in controversy about 1895 or 1896. His original entry was tortious, apparently without any claim and as a naked trespasser; but about 1898 or 1899 he attorned to the Ascarates. From the date the occupancy of Calsadillas as a tenant of the Ascarates begun, the constructive possession of appellants, by virtue of occupancy of Regalado, was broken, and their seisin was limited to the part of which Regalado had pedal possession. Parker v. Baines, 65 Tex. 605; Evitts v. Roth, supra. There is nothing in the testimony of the various witnesses quoted by appellees to show any disseisin of appellants' constructive possession prior to 1898 or 1899.

The testimony of Villareal is almost wholly unintelligible. It gives no accurate idea as regards dates or the location of the land, which he refers to as being in Babbitt's possession and use. Rogers did not go there until 1907. One Armenta testifies regarding some land he went upon in 1897 and cultivated, but it is not located so that this court can identify it, and further he entered as a trespasser, and there is no pretense of a tenancy under appellees until two years later. Thus it is seen that, from 1889 until 1899, appellants, according to their evidence, were in actual possession by tenant of certain land included within the boundaries of their deeds, and, by virtue thereof, had constructive possession of the whole for a period of more than five years, and had the right to have the issue of limitations under the five-year statute submitted to the jury.

We gather from appellees' counter proposition, argument, and authorities cited that they rely upon the principle with reference to constructive possession recognized and applied in Turner v. Moore, 81 Tex. 206, 16 S. W. 929; Cook v. Lister, 15 Tex. Civ. App. 31, 38 S. W. 380; Beaumont Pasture Co. v. Polk, 55 S. W. 614; Payton v. Caplin, 24 Tex. Civ. App. 364, 59 S. W. 624; Hess v. Webb, 113 S. W. 618; Blaske v. Settegast, 123 S. W. 220; Lowry v. McDaniel, 124 S. W. 710; Mayhan v. McManus, 130 S. W. 881; and Noland v. Weems, 141 S. W. 1031.

Had the premises upon which Regalado entered and of which he had actual possession been situate in the Ysleta grant, then, under the authorities cited, it is quite clear his constructive possession would not have extended beyond the limits of the Ysleta, and attached to lands in the Ascarate owned by appellees; but apparently such is not the case with reference to the land upon which he actually entered. It is true it was upon land covered by the disclaimer contained in the trial amendment and south of the line there described, but, according to all of the evidence offered by appellees, locating the Rio Viejo so as to embrace within the Ascarate the land for which they sued, the house and cultivated lands of Regalado were north of the Rio Viejo and its junction with the New river, which would place him upon the Ascarate, and upon land in no wise conflicting with the Ysleta grant. His constructive possession of the premises in controversy was therefore dependent upon whether or not he was upon the Ascarate grant, and apparently he was. If he was upon the Ascarate, the rule would apply giving constructive possession to all of the land in the Ascarate contained in boundaries of appellants' deeds. He was in actual possession of a part of the Ascarate covered by the deed of his landlords, and the authorities cited by appellees do not support their contention that constructive possession did not extend to all of the land in that grant covered by the deed. Upon the contrary, they expressly recognize its application under the facts here presented. The application of the rule could not be defeated by a mere disclaimer on part of appellees to the land, so in actual possession, and by them giving a course and distance description of the Ascarate south line to the north of the true location of the Rio Viejo. The bank of the Rio Viejo was the dividing line between the grants from its junction with the New river; all land to the south of this bank was in the Ysleta grant; that to the north thereof was in the Ascarate. Pleadings and disclaimers cannot alter this fact, nor can the rules with reference to constructive possession be thus evaded or defeated. Appellees will not be permitted to recover upon the question of boundary by fixing the Rio Viejo at one point so as to embrace in the Ascarate the land for which they sue, and then defeat the application of a well-established rule relating to constructive possession by a disclaimer and description of an imaginary line, so as to apparently place the land in actual possession in another grant. In this connection it may be stated that no such subdivision of the Ascarate is shown as would make applicable the rule contended for by appellees. As we understand their contention, it is that the rule applies because the constructive possession would not be permitted to extend to land in the Ascarate by virtue of actual possession in the Ysleta. This, it seems, is not the case presented by the facts in evidence, which con-

.trol the question, rather than the disclaimer .and description of south line of the Ascarate contained in the trial amendment. The trial :court erred in withdrawing the issue of limitation from the jury.

[12] The court did not err in permitting the witness Owen to testify with reference to the Tays map, as indicated in seventeenth assignment. The map had been offered in evidence by appellants, and, if it was incorrect, appellees could show that fact by the testimony of a surveyor familiar with the facts. The fact that it is a land office archive does not affect the right to show it to be incorrect.

Considering the charge as a whole, and in connection with appellant's special instruction No. 14, given by the court, we are not prepared to sustain the objection to the eighth paragraph of the general charge, but, upon retrial, suggest that the criticism made be obviated.

[13] Under the twentieth assignment it is urged that the court erred in giving a special instruction of plaintiffs, reading: "You are further instructed, gentlemen of the jury, upon request of the plaintiffs, that the initial on beginning point in any field notes and maps or surveys, as shown by the evidence introduced before you, are of no greater importance than any other corner or point purporting to be located by such field notes or maps, and you are further instructed that it is permissible and lawful, in making a survey according to prior existing field notes, to reverse the calls and follow the footsteps of the original surveyor in their reverse order, as it is to follow the footsteps of such original surveyor by beginning with the initial point and proceeding to survey out the various calls in the order in which such original surveyor made such survey on the ground." The propriety of giving this charge cannot be considered, as no assignment of error relating thereto was filed in the lower court. The question presented is not fundamental in its nature, and we therefore decline to consider the assignment.

For the error indicated, with respect to the issue of limitation, the cause must be reversed and remanded. The majority of the court hold that the reversal should be a general one, and it is so ordered. The writer is of the opinion that the reversal should be a limited one; that it should be reversed and remanded for a new trial on the issue of limitation only; and that the issue of boundary be not reopened and submitted. That this is the proper order that should be entered, I think, is supported by the following authorities: McConnell v. Wall, 67 Tex. 352, 5 S. W. 681 (see original opinion in 65 Tex. 397); Wells v. Littlefield, 62 Tex. 28 (original opinion in 59 Tex. 556); Telegraph Co. v. Hoffman, 80 Tex. 420, 15 S. W. 1048, 26 Am. St. Rep. 759; Schuster v. Bauman Jewelry Co., 79 Tex. 179, 15 S. W. 259, 23 Am. St. Rep. 327; Shirley v. Ry. Co., 78 Tex.

131, 10 S. W. 543; Id., 24 S. W. 809; Hanrick v. Hanrick, 81 S. W. 795; rule 62a for the Government of Courts of Civil Appeals (149 S. W. x). Nona Mills Co. v. Jackson, 159 S. W. 932; Benjamin v. Ry. Co., 49 Tex. Civ. App. 473, 108 S. W. 408; Marshall v. City of San Antonio, 63 S. W. 138.

### On Rehearing.

The members of the court concur in the view that the motions for rehearing, filed herein by appellants and appellees, respectively, should be overruled, and it is so ordered.

The writer desires to collate the authorities and briefly state the grounds of his conclusion that this cause should be remanded for trial on the issue of limitation only.

Article 1048, R. S. 1879, discussed in Wells v. Littlefield, post, reads: "Where the judgment or decree of the court below shall be reversed the Supreme Court, or Court of Appeals, shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained, or the damages to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below." This statute was carried forward into the Revised Statutes of 1895 as article 1027, and into Revised Statutes of 1911 as article 1626, in the same language, except, only, that in the statutes of 1895 and 1911 it is made applicable to Courts of Civil Appeals, instead of the Supreme Court and Court of Appeals.

In Wells v. Littlefield, 59 Tex. 556, upon trial of right of property, the cause was remanded with directions to the court below to enter such judgment in favor of Wells as, under the law announced in the opinion, he was entitled to on the former trial, and to allow him such recovery as he had a right to in the state of the record below had the decision there been in his favor upon the trial of the right to the property in controversy. The trial court, upon a showing by Littlefield of newly discovered evidence, was about to reopen and retry the whole case, and, in issuing a mandamus to compel observance of its instructions, the Supreme Court, in Wells v. Littlefield, 62 Tex. 28, says: "But it is urged that the writ cannot be used in this instance, because the Supreme Court cannot reverse and remand a cause except for a new trial upon all the issues in the case, both those which were and those which were not determined by the court in passing upon the appeal. This view seems to be based upon the language of our Revised Statutes, art. 1048, which provides that, 'where it is necessary that some matter of fact be ascertained, or the damages to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial in the court below.'

This article is the same as that contained in the act in force at the time the Revised Statutes were adopted, with the exception that the words 'new trial in the court below' are used in the Revised Statutes, instead of the words, 'definite decision,' which occur in the former act. There is but little material variance between these two expressions, and in the case of Chambers v. Hodges, 3 Tex. 517, they were treated by Chief Justice Hemphill as having a similar meaning. We do not consider that by the use of the words 'new trial' it was meant that, no matter what might be the decision of this court, or how far it had settled the rights of the parties, in every case where a cause was remanded it should be reopened upon all the issues which could possibly arise in it, both those which were determined and those which were not by the decision of the Supreme Court. Examples readily occur in which this court may close investigation as to points passed upon in its opinion, but permit it as to others which it is necessary to ascertain, before a proper judgment disposing of the rights of the parties can be pronounced; for instance, in a suit for land where judgment has gone for a defendant who had pleaded improvements made in good faith. If that judgment is reversed, the court might well render its judgment decreeing the land to the plaintiff, but remanding the cause for the purpose of ascertaining the value which should be allowed the defendant for his improvements. For other instances, see Wood v. Wheeler, 7 Tex. 25, and Anderson v. Powers, 59 Tex. 213. The language of the statute itself seems to imply that the very facts which are wanting so as to prevent this court from fully disposing of the case are those which the new trial may be given to ascertain. At least that it would not be out of the power of the court to remand the cause for a definite finding of these facts alone. It has been the practice of this court from its earliest days down to the present time to reverse and remand causes to the district court, and to enter judgments in accordance with their decisions. Chambers v. Hodges, 3 Tex. 517; Peters v. Caton, 6 Tex. 554; Wood v. Wheeler, 7 Tex. 13; Id., 9 Tex. 127; Anderson v. Powers, 59 Tex. 213; Cowan v. Nixon, 28 Tex. 240. This having been the uniform practical construction given to the act in force before the Revised Statutes were adopted, and the latter having adopted substantially the language of that act, it must have been the intention of the Legislature that the same interpretation should be applied to the new statutes. Hillebrand v. McMahan, 59 Tex. 450; State v. Smith, 55 Tex. 447. We think this court had authority to remand the cause to be disposed of as required in the opinion of the court."

Wall v. McConnell, 65 Tex. 397, was a suit against a county treasurer for recovery of money belonging to the county improperly retained by that officer as commissions. The rights of the treasurer depended upon the date certain drafts were collected. This order was entered: "The judgment of the court below will be reversed and the cause remanded, in order that inquiry may be made as to the time at which the money collected on the drafts given to cover amounts to which the county was entitled on insurance was received, and that judgment may be there entered in accordance with this opinion." The court below followed these instructions, refused to reopen the entire case, and, upon subsequent appeal (67 Tex. 352, 5 S. W. 681) from the judgment so entered upon the instructions, it was said: "This cause, having been tried without a jury, was before this court at the last term, and is reported in 65 Texas, 397. The rights of the parties were then determined, except as to one item, in reference to which the evidence was not sufficiently full to enable this court to render the proper judgment. The judgment was reversed, and the cause remanded, with instructions to the court below to ascertain when Houston county received certain money on an insurance policy which it held, and then to render a judgment in accordance with the opinion. It became necessary to ascertain when the insurance money was received, in order that the commissions to which the appellant was entitled, as county treasurer, might be known; he being entitled, to a certain date, to 2½ per cent. on moneys received, and only to one-half of that sum after that date. When the cause was called for trial, after being remanded, it was admitted that the insurance money was received at such time as to entitle the appellant to the higher commissions, but he insisted on opening the whole case and having a trial by a jury, which was refused. This is assigned as error. The court below did not misunderstand the former judgment of this court, and correctly refused to reopen the entire case. If the appellant was of the opinion, when the judgment of this court was entered at the last term, that on another trial he could make proof that would show his right to be other than by the record it then appeared, he should have asked this court so to reform its judgment as to give him an opportunity to do so. This he did not do. To have given him a jury trial would have been useless; for every fact affecting his right which could be inquired into was admitted to be as he claimed it to the utmost extent. There is no error in the judgment, and it will be affirmed."

The rule of practice established by these two cases has been many times observed and enforced.

In Hanrick v. Gurley, 93 Tex. 458, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330, the rights of the parties were finally determined and adjudicated, except those arising upon the issues presented by the claim of E. G. Hanrick for contribution, and the cause was re-

versed and remanded for the sole purpose of a further accounting between the parties in accordance with the opinion. See, also, opinion of the Court of Civil Appeals upon subsequent appeal in 81 S. W. 795.

In Schuster v. Bauman Jewelry Co., 79 Tex. 179, 15 S. W. 259, 23 Am. St. Rep. 327, it was said: "A separate suit could have been brought for each of the three parcels of land for which this action was brought. The controversies as to the several titles grew out of the transactions wholly distinct from each other. Such was the case of Cooper v. Lee, 75 Tex. 114 [12 S. W. 483], in which this court found error in the proceedings as to one tract of land, but no error as to another tract which had been recovered in the same judgment in the court below. In the first instance the judgment as a whole was reversed, and the cause remanded, but, upon a motion for rehearing and to reform the judgment, the court affirmed the decree below as to the one tract, and reversed and remanded the cause as to the other. [It is to be noted that the action upon the motion does not appear in the report of the case.] In the present case we find reversible error as to the tract of land first conveyed to Mrs. Schuster, but no error as to the last. She recovered the city lot bought January 9, 1882. The judgment of the court below will accordingly be reversed as to the tract of 20 acres of land conveyed to Mrs. Schuster February 17, 1881, and the cause remanded for a new trial as to that. It will, in all other respects, be affirmed."

In Shirley v. Ry. Co., 78 Tex. 131, 10 S. W. 543, the cause was remanded "with instructions to the court below to try the issue whether the sale of the Waco & Northwestern Railway made to the Houston & Texas Central Railway Company through and under the terms and provisions of the deed of trust executed by John T. Flint for and as president of the Waco & Northwestern Railway Company to Gray and Botts, the trustees therein mentioned for the Houston & Texas Central Railway Company, was fraudulent as to appellant's rights as a creditor of said Waco & Northwestern Railway Company, and to try no other issue now made or presented by the pleadings in this cause. And, if, upon a trial of the issue above instructed to be tried, it shall be found that said sale so made under said deed of trust was not fraudulent, then and in that event judgment shall be entered against the trustees for the stockholders and creditors of said Waco & Northwestern Railway Company in their representative capacity only for the sum of $16,453.90, with interest on said sum from the date of the judgment from which this appeal was taken, together with a foreclosure of appellant's lien upon the railway and appurtenances thereto belonging from Bremond, in Robertson county, to the city of Waco, in McLennan county, against said trustees and the said Houston

& Texas Central Railway Company to enforce its payment. And that judgment be rendered against said trustees for the sum of $96,602 with interest thereon also from the date of the judgment from which this appeal was taken, to be paid out of any assets in their hands as such trustees. And, if, upon a trial of the issue above directed to be tried, it should be found that the sale of said Waco & Northwestern Railway and its appurtenances under the terms of said deed of trust was made with intent to defraud the creditors of said Waco & Northwestern Railway Company, then and in that event the said Waco & Northwestern Railway Company shall be adjudged subject to sale for the satisfaction of the judgment to be rendered in favor of appellant against said trustees."

In Benjamin v. Ry. Co. (Dallas) 49 Tex. Civ. App. 473, 108 S. W. 408, the plaintiffs sued the railway company for damages resulting from the maintenance by the railway company at its shops of certain oil on its premises, and allowing the same to escape so as to pollute the water of a creek upon which the plaintiff's land was situated, which pollution caused damage to plaintiff's crops, the destruction of fish, and injury of his cattle. The trial resulted in a verdict for the railway company, and the plaintiff appealed. Upon appeal the court determined that the case had been correctly tried as to the issue affecting damage to crops, fish, etc., but that error had been committed with reference to the issue of damage to plaintiff's cattle, and reversed and remanded the case on account of such error. On rehearing the court limited the remand of the case to the issues relating to the damages to the cattle, assigning reason for limitation upon issues to be retried as follows: "The court in its general charge presented each of these items separately and distinctly, so that the jury, in considering them, could not have possibly gotten them confused with the other items of damage presented, or with each other, and their verdict was, in effect, that plaintiff did not suffer damage as to either of them, which finding is supported by the evidence. The error in the court's charge on which a reversal was based related alone to damages to cattle, and which in no way was calculated to affect the finding as to the crops of oats and grass and fish. Such being the condition of the record showing that plaintiff has had a fair and impartial trial as to these items, he should not be allowed to have another chance to recover as to them. Therefore the judgment heretofore rendered will be changed, affirming as to said items, and reversing as to the remainder of said items."

So, in the case at bar, the error of the court in withdrawing the issue of limitation in no wise relates to and in no possible way can it affect the boundary question. Whatever the facts may be with respect to limitation, they cannot affect the location of

the Rio Viejo, which alone controls the determination of the boundary issue.

In Marshall v. City of San Antonio (San Antonio) 63 S. W. 138, the plaintiff sued the city for breach by it of a contract for the construction of a certain sewer system. Under the contract, he was to perform certain specific services and to be paid according to certain classifications. When the work was about a third completed, a dispute arose between him and the city as to the construction of a contract, and the city relet the contract to another company. Plaintiff sued for the work done by him, and for profits he alleged he would have made but for such alleged breach by the city. The city answered, seeking affirmative relief by reason of the alleged cost of having the contract completed after plaintiff's default. It admitted that it held certain funds due the plaintiff, but that it had a right to credit the same upon its claim and to recover a balance over against the plaintiff. The case was tried before a jury, which found in favor of the city. On appeal, the Court of Civil Appeals, by Judge Neill, held that the error was committed in reference to the issue of the city's right to a recovery against plaintiff, and reversed and remanded the case. On motion for rehearing, however, they limited the remand to the issues in which error had been found, saying: "The issue of the amount of damages, if any, sustained by the city, which involves its right to withhold said sum of money, is the only one which, in our opinion (save the claim of the intervener as assignee of said fund), was not properly disposed of in the trial court. Therefore, under authority of Shirley v. Ry. Co., 78 Tex. 150, 10 S. W. 543, our former reversal of the entire judgment is set aside, and to this extent only the motion for rehearing is granted, and the judgment of the court below is reversed, and the cause remanded, with instructions to the court below to try the issue above stated, and to try no other issue now made or presented by the pleadings in this case; and if, upon the trial of the issue instructed to be tried, it shall be determined that the city is entitled to withhold said sum of money by reason of the damages it claims to have sustained, to enter final judgment in favor of the city; but, if, upon the trial of said issue, it shall be determined that the city is not entitled to withhold said sum of money, or any part of it, then to enter final judgment in favor of plaintiffs in error (plaintiffs below) against the city for said sum, or such part of it as may be determined it is not entitled to withhold from plaintiffs in error. With this modification of our former judgment, the motion for rehearing is overruled."

Nona Mills Company v. Jackson (Galveston) 159 S. W. 932, was a suit in trespass to try title for certain lands, and for damages for timber taken from the land. The plaintiffs, as tenants in common, recovered the land, and also recovered damages for the timber taken from the land. An opinion by Judge Pleasants held that the plaintiffs, who were tenants in common, were entitled to recover the land, etc., as against defendants who had no title, but that they could only recover that portion of the damages for timber cut and taken from the land to which their interest in the land entitled them, and the evidence failed to show what their particular interest in the land was, and therefore failed to show what portion of the damages they were entitled to recover. The court, therefore, by reason of such error, reversed the case as to the recovery of damages for the removal of the timber, and remanded the cause, with instructions to the trial court to hear evidence upon the question of what interest the plaintiff had in the sum found to be the amount of the damages, and to give them judgment accordingly. The court cited rule 62a for its action in so remanding the case. It may be suggested that this practice violates the provisions of article 1997, Revised Statutes 1911, which reads: "Only one final judgment shall be rendered in any cause, except where it is otherwise specially provided by law." This statute, however, relates to judgments of the district and county courts. Judgments of the Courts of Civil Appeals are governed by article 1626, R. S. 1911. Wells v. Littlefield and Wall v. McConnell, supra.

The reasons for the rule that in some instances permits the Supreme Court and Courts of Civil Appeals to reverse a case in part and affirm in part, or to remand on certain issues, are not altogether applicable to trial courts. Schintz v. Morris, 13 Tex. Civ. App. 580, 603, 35 S. W. 516, 36 S. W. 292. And it would seem that article 1626, as construed by the Supreme Court in the two cases mentioned, furnishes the exception permitted by article 1997. At any rate, the rule and practice is well established of affirming as to certain parties and reversing as to others, when a proper decision of the case as to one is not dependent upon the judgment as to the other. Hamilton v. Prescott, 73 Tex. 565, 11 S. W. 548; Ry. Co. v. Emos, 92 Tex. 577, 50 S. W. 928; Wimple v. Patterson, 117 S. W. 1034; Tel. Co. v. Hoffman, 80 Tex. 420, 15 S. W. 1048, 26 Am. St. Rep. 759; State v. Dayton Lumber Co., 164 S. W. 48. So it would seem that article 1997 has never been considered by the Supreme Court as standing in the way of limited reversals or remanding with instructions, and to the writer it seems that these authorities indubitably establish the right of this court to foreclose further investigation and retrial of an issue, which has been once correctly tried and decided, and which is entirely severable from, and in no wise dependent upon, other issues in the cause improperly tried or erroneously decided. But the Courts of Civil Appeals seem to have enforced it in but few instances, and on

November 22, 1911, the Supreme Court promulgated for the observance of said courts a rule with reference to reversals as follows: "If it appear to the court that the error affects a part only of the matter in controversy, and the issues are severable, the judgment shall only be reversed and a new trial ordered as to that part affected by such error." Rule 62a (149 S. W. x).

We must certainly assume that the Supreme Court acted advisedly in promulgating this rule, and had a definite purpose in mind which it desired to accomplish. Its language alone, to the mind of the writer, bears obvious and unmistakable proof that it was intended to cover and enjoin upon the Courts of Civil Appeals the observance of the rule of practice recognized and declared in the various cases to which reference is made above. And I am further firmly convinced that the rule is most salutary, and should be enforced in all instances where applicable. Its manifest tendency is to a quicker and surer administration of justice without the sacrifice of any substantial right. Now in the case at bar there are two issues: First, of boundary; second, of limitation. The boundary issue is wholly severable, and in no wise dependent upon limitation, and to assume otherwise is an evasion of the question controlling the proper remanding order to be entered. The boundary question depends upon the location of the Rio Viejo. Whatever the facts may be with respect to payment of taxes, adverse possession and claim by defendants would not change its location. The issue as to its location has been tried without error, and decided in plaintiff's favor. Why try it again? Why should not further inquiry as to its location be foreclosed, since it has been investigated and determined in a trial free from error? The issue having been once fairly and impartially decided against appellants, they should not be permitted to again try the same. It is neither just, right, nor proper. Benjamin v. Ry. Co., supra.

Under the general order of reversal entered herein, the issue as to the Rio Viejo's location will be retried, as well as limitation. Suppose the cause be submitted upon special issues, that a finding against defendants be returned upon the issue of limitation, but in their favor upon the question of boundary, that this trial was without error; upon appeal to this court the judgment would be affirmed. This court would thus finally affirm a judgment in defendant's favor upon the issue of boundary, which issue upon this appeal, it is said, was correctly decided in plaintiff's favor.

I am of the opinion that the finding of the jury as to the location of the Rio Viejo should not be disturbed, and that, upon retrial, the inquiry should be confined to the issue of limitation.